865 A.2d 825

**EMPLOYERS INSURANCE OF WAUSAU,
a Mutual Company, Appellant**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT
OF TRANSPORTATION, Appellee.**

Supreme Court of Pennsylvania.

Argued May 12, 2004.

Decided Jan. 18, 2005.

382

Willian Allen Torrance, for Employers Ins. of Wausau, a Mut. Co., appellant.

Christopher Farrell Wilson, for Dept. of Transp., appellee.

Before: CAPPY, C.J., CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and BAER, JJ.

## OPINION

Justice BAER.

This case comes before us after the Commonwealth Court, acting within its original jurisdiction, granted preliminary objections and dismissed the claims of Employers Insurance of Wausau (hereinafter Wausau) against the Commonwealth of

Pennsylvania, Department of Transportation (hereinafter PennDOT). The issue we must determine is whether the Board of Claims is the proper tribunal to hear claims against the Commonwealth premised upon the doctrines of assignment and equitable subrogation. Based on the following, we reverse and remand with direction that the Commonwealth Court transfer the entire matter to the Board of Claims.

In March of 1999, Jack Lang, d/b/a Lang Construction Company (hereinafter Lang) entered into a contract with PennDOT for the paving and construction of a bridge in Washington County, Pennsylvania. As required by Section 3(a)(2) of the Public Works Contractors' Bond Law of 1967,[1] Lang, as a principal, obtained performance and payment bonds from Wausau as a surety. In accordance with the bond, Wausau and Lang executed a general indemnity agreement that included a provision whereby Lang assigned to Wausau the right to collect all sums due to Lang under the PennDOT/Lang contract, in the event Lang defaulted on its obligation to pay for labor or material used in the fulfillment of that contract.[2]

1. The Public Works Contractor's Bond Law requires a contractor to obtain payment and performance bonds before "any contract exceeding five thousand dollars for the construction, reconstruction, alteration or repair of any public building or other public work or public improvement, including highway work, of any contracting body is awarded to any prime contractor...." 8 P.S. 193(a).

2. Specifically, the general indemnity agreement contained, *inter alia*, the following clause:

> The Indemnitors hereby assign, transfer, pledge and convey to the Surety (effective as of the date of each such bond, but only in the event of default, breach or failure as referred to in preceding Section 4.), as collateral security, to secure the obligations hereunder and any other indebtedness and liabilities of the Indemnitors to the Surety, all of their rights under the contracts, referred to in such bonds, including their right, title and interest in and to (1) all subcontracts let in connection therewith and such subcontractors' surety bonds, (2) all machinery, plant, equipment, tools and materials which shall be upon the site or sites of the work or elsewhere for the purposes of the contracts, including all materials ordered for the contracts, and (3) *any and all sums due or which may thereafter become due under such contracts* and all sums due or to become due on all other contracts, bonded or unbonded, in which any or all of the Indemnitors have an interest.

Lang subsequently failed upon its obligation to make payments to numerous labor and material suppliers working on PennDOT's project, rendering Wausau, as surety, responsible for such payments. In accordance with its obligation, Wausau discharged the claims and then, by letter dated November 3, 2000, demanded that PennDOT not release further funds to Lang without Wausau's consent.[3] Wausau indicated in the letter that it was entitled to make such a demand pursuant to the doctrines of equitable subrogation and assignment, and included a copy of the general indemnity agreement. Nevertheless, PennDOT subsequently released funds directly to Lang. Wausau's unreimbursed losses, based upon PennDOT's payment to Lang after notice of Wausau's claim amounted to $60,470.59, including litigation and adjustment expenses such as attorney fees.

Accordingly, on November 8, 2002, Wausau filed a petition for review in equity in the Commonwealth Court, in its original jurisdiction, to recover from PennDOT the monies it had improperly paid to Lang. In its petition, Wausau asserted in Count I that PennDOT was responsible for payment of the funds pursuant to the doctrine of equitable subrogation. In Count II, Wausau argued that, in the alternative, it had put PennDOT on notice that Lang had assigned the right to receive all contract balances to Wausau, pursuant to the general indemnity agreement between Lang and Wausau precluding PennDOT's payments to Lang.

PennDOT filed preliminary objections arguing, *inter alia,* that the Commonwealth Court lacked subject matter jurisdiction in equity over both Wausau's equitable subrogation claim and assignment claim. Specifically, PennDOT submitted that Wausau's claim for equitable subrogation sounded in negligence, as a claim for monetary damages, and not equitable relief. Further, PennDOT argued that Wausau's assignment

General Indemnity Agreement, ¶ 5 (emphasis supplied).

**3.** The record does not reflect why Wausau demanded only that PennDOT retain such monies when, pursuant to the contract's assignment clause, Wausau was entitled to have PennDOT pay it the monies due to Lang.

claim sounded in assumpsit, and should have been heard by the Board of Claims, as the tribunal having exclusive jurisdiction over claims arising from contracts with the Commonwealth. 72 P.S. § 4651–4.[4]

By Order dated May 2, 2003, the Commonwealth Court sustained PennDOT's preliminary objections, finding that the court lacked subject matter jurisdiction to hear the claims, and dismissed Wausau's petition for review. Specifically, regarding the equitable subrogation claim, the court found that Wausau's remedy was at law, based on monetary damages in the amount of $60,470.59, rendering equity jurisdiction inapplicable. The court noted,

> the crux of the controversy is that the Department allegedly mishandled contract proceeds. Regardless of Wausau's choice of words, it has actually alleged negligence by the Department. Wausau's remedy at law is based on monetary damages in the amount of $60,470.59. This legal remedy is full, complete, and adequate under the circumstances. Therefore, this Court does not have jurisdiction over Wausau's petition for review in equity.

Commonwealth Court slip opinion at 5. As for the assignment claim, the court's basis for concluding its lack of jurisdiction necessitating dismissal is unclear. The court cited the relevant paragraphs from PennDOT's preliminary objections asserting that the Board of Claims was the proper tribunal for the claim; but, nevertheless, dismissed the claim, and, with it, Wausau's Complaint.

 Thereafter, Wausau timely moved for reargument before the Commonwealth Court requesting that the court transfer the case to the Board of Claims asserting that its action arose from the contract between PennDOT and Lang. The court denied said motion and Wausau appealed to this

---

4. Section 4651–4 provides, in relevant part,

> The Board of Claims shall have exclusive jurisdiction to hear and determine all claims against the Commonwealth arising from contracts hereafter entered into with the Commonwealth, where the amount in controversy amounts to $300.00 or more.

Court, again contending that the Commonwealth Court erred in dismissing its action without transferring the matter to the proper tribunal, *i.e.,* the Board of Claims.[5] Because Wausau's petition for review listed two counts for relief, one for equitable subrogation and one as the assignee of the contract between Lang and PennDOT, we will examine whether the Commonwealth Court erred in failing to transfer each particular claim to the Board of Claims pursuant to Pa.R.Civ.P. 213(f), rather than dismissing them.[6] To determine if each matter should have been transferred to the Board of Claims, we must decide whether the assignment and equitable subrogation claims are contractually based, respectively, and if so, whether they "aris[e] from contracts [ ] entered into with the Commonwealth" for purposes of the Board of Claims enabling statute, Section 4, 72 P.S. § 4651-4 (superseded by 62 Pa.C.S.

5. We note initially that the standard for review for preliminary objections is a limited one. *See AM/PM Franchise Ass'n v. Atlantic Richfield Co.,* 526 Pa. 110, 584 A.2d 915, 921 (1990). As we stated in *Vattimo v. Lower Bucks Hosp., Inc.,* 502 Pa. 241, 465 A.2d 1231, 1232-33 (1983):

 All material facts set forth in the complaint as well as all inferences reasonably deducible therefrom are admitted as true for [the purpose of this review.] *Clevenstein v. Rizzuto,* 439 Pa. 397, 266 A.2d 623 (1970). The question presented by the demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible. *Hoffman v. Misericordia Hospital of Philadelphia,* 439 Pa. 501, 267 A.2d 867 (1970). Where a doubt exists as to whether a demurrer should be sustained, this doubt should be resolved in favor of overruling it. *Birl v. Philadelphia Electric Co.,* 402 Pa. 297, 167 A.2d 472 (1960).

6. Pa.R.Civ.P. 213(f) provides:

 When an action is commenced in a court which has no jurisdiction over the subject matter of the action it shall not be dismissed if there is another court of appropriate jurisdiction within the Commonwealth in which the action could originally have been brought but the court shall transfer the action at the cost of the plaintiff to the court of appropriate jurisdiction. It shall be the duty of the prothonotary or clerk of the court in which the action is commenced to transfer the record together with a certified copy of the docket entries to the prothonotary or clerk of the court to which the action is transferred.

 As the Board of Claims is considered a judicial tribunal, transfer pursuant to Rule 213(f) would be warranted if it were determined that the Board was the "court of appropriate jurisdiction." *See Foley Bros., Inc. v. Commonwealth, Department of Highways,* 400 Pa. 584, 163 A.2d 80 (1960) (holding the Board of Arbitration of Claims is a judicial tribunal).

§ 1724).[7] We turn, initially, to the propriety of the court's dismissal of the assignment claim.

## I. Assignment

█ Wausau asserts that this case clearly arises from a contract entered into with the Commonwealth. Specifically, Wausau posits that any right it may have to collect contract proceeds from PennDOT is based on PennDOT's contract with Lang and arises from Wausau's satisfaction of claims for unpaid supplies of labor and materials provided to Lang for the benefit of PennDOT, as well as Lang's assignment to Wausau of the right to collect such proceeds. PennDOT, to the contrary, argues that this case does not arise from a contract entered into with the Commonwealth. PennDOT asserts that Wausau cannot establish that it was either a party to PennDOT's contract or an intended third party beneficiary, because the Lang/PennDOT contract did not explicitly mention Wausau. We believe Wausau's contentions are correct, and, consequently, disagree with PennDOT.

█ Wausau's allegation of assignment stems from the general indemnity agreement in which Lang assigned to Wausau the right to collect contract proceeds from PennDOT in the event Lang defaulted on its obligations, under the PennDOT/Lang contract, to third party labor and material suppliers. "An assignment is a transfer of property or some other right from one person to another, and unless in some way qualified, it extinguishes the assignor's right to performance by the obligor and transfers that right to the assignee." *Pentlong Corp. v. GLS Capital, Inc.*, 573 Pa. 34, 820 A.2d 1240, 1249 (2003); *see also In re Purman's Estate*, 358 Pa. 187, 56 A.2d 86 (1948). The right to receive money due or to become due is generally assignable. *In re Noel Coal, Inc.*, 82 B.R. 778 (Bkrtcy. W.D.Pa.1988). Under the law of assignment, the assignee succeeds to no greater rights than those

7. 72 P.S. § 4651–4 was repealed pursuant to 2002, Dec. 3, P.L. 1147, No. 142, § 21(a)(2), § 22(1)(iv). The repealed provision of Section 4, 72 P.S. § 4651–4 is now covered in 62 Pa.C.S. § 1724(a)(1), which is, in relevant part, substantively identical to the repealed section.

possessed by the assignor. *See Himes v. Cameron County Construction Corp.*, 497 Pa. 637, 444 A.2d 98, 100 (1982). An assignment will ordinarily be construed in accordance with the rules of construction governing contracts and the circumstances surrounding the execution of the assignment document. *See U.S. National Bank v. Campbell*, 354 Pa. 483, 47 A.2d 697 (1946); *see also Horbal v. Moxham Nat. Bank*, 548 Pa. 394, 697 A.2d 577 (1997) (Castille, J., concurring.) [8]

Based on the foregoing, it is clear that under the law of assignment, Wausau stepped into Lang's shoes *vis-à-vis* Penn-DOT and, thus, clearly presents a claim sounding in contract. Moreover, despite the fact that Wausau was not mentioned in the PennDOT/Lang contract, we think it is clear that this claim nevertheless falls within the jurisdiction of the Board of Claims, as defined by Section 4 of the Board of Claims Act, 72 P.S. § 4651–4, stating:

> "The Board of Claims shall have exclusive jurisdiction to hear and determine all claims against the Commonwealth arising from contracts hereafter entered into with the Commonwealth, where the amount in controversy amounts to $300.00 or more."

The plain language of the statute states that contracts entered into by the Commonwealth are within the exclusive jurisdiction of the Board of Claims. Moreover, the statute is silent regarding the preclusion of the generally permissible assignment of rights described above, nor does the statute identify any restrictions on the non-Commonwealth party preventing them from bringing a claim based upon the assignment of rights. Therefore, because Wausau is effectively instituting a

8. It is uncontradicted that Wausau placed PennDOT on notice of the assignment, a necessary predicate for enforcement thereof. It is a settled principle of contract law that an assignor retains his power to discharge or modify the duty of the obligor until the obligor receives notification that the right has been assigned and that performance is to be rendered to the assignee. Restatement of Contracts, (Second) § 338; *see also Provident Trust Co. v. Metropolitan Casualty Ins. Co.*, 152 F.2d 875 (3d Cir.1945); *First National Bank of Bangor v. Bangor Trust Co.*, 297 Pa. 115, 146 A. 595 (1929); *Burger v. Freedom Twp.*, 126 Pa.Super. 128, 190 A. 387 (1937); 29 Williston on Contracts, § 74:56 (4th ed. 2004).

claim against the Commonwealth seeking the enforcement of rights that were created, and assigned, by a contract with the Commonwealth, the Board of Claims is the proper forum to adjudicate the assignment claim. *See Texas Keystone Inc. v. Pennsylvania Dept. of Conservation and Natural Resources,* 851 A.2d 228, (Pa.Cmwlth.2004). If PennDOT is liable to Wausau as assignee, it is because such liability arises from PennDOT's underlying contractual liability to the assignor.

## II. Equitable Subrogation

We now turn to the question of whether the Board of Claims should also hear the equitable subrogation claim as one "arising from a contract with the Commonwealth." Initially, we note that this Court and intermediate courts have made clear that a subrogation claim, in substance, is equitable in nature, and therefore does not sound in assumpsit. For example, in *Jacobs v. Northeastern Corp.,* 416 Pa. 417, 206 A.2d 49 (1965), this Court quoted the United States Supreme Court indicating "[t]he right of subrogation is not founded on contract. It is a creature of equity; is enforced solely for the purpose of accomplishing the ends of substantial justice; and is independent of any contractual relationship between the parties." *Id.* at 53 (quoting *Memphis & Little Rock R.R. v. Dow,* 120 U.S. 287, 301–02, 7 S.Ct. 482, 30 L.Ed. 595 (1887)); *see also Gildner v. First Nat. Bank & Trust Co.,* 342 Pa. 145, 19 A.2d 910, 915 (1941) ("The doctrine of subrogation was adopted from the civil law and is based not on contract but on considerations of equity and good conscience."); *Furia v. City of Philadelphia,* 180 Pa.Super. 50, 118 A.2d 236, 238 (1955) ("Subrogation is an equitable doctrine and its basis is the doing of complete, essential and perfect justice between all parties without regard to form."); *Roush v. Gelnett,* 31 Pa. D. & C. 4th 420 (Com.Pl. Snyder Co.1996) ("[T]he doctrine of subrogation is based on considerations of equity and good conscience ... to promote justice ... [and] is granted as a means of placing the ultimate burden of the debt on the person who should bear it. It is not a matter of contract or privity").

Thus, the doctrine of equitable subrogation itself is not founded on contract law, but rather arises from society's recognition of the contractor's statutory obligation to provide the bonds in questions, and society's concomitant belief that any monies otherwise due the contractor should, in fairness, be employed to recompense the bondsman. *See Jacobs,* 206 A.2d at 53. As noted above, it is a creature of equity and is independent of any contractual relations. *See id.* Wausau's claim in this case is an attempt to enforce its equitable lien against contract funds. To determine whether the subrogation claim nevertheless should be deemed to arise from a contract entered into with the Commonwealth for purposes of Section 4, it is instructive to review and understand the purpose of the Board of Claims.

The legislature created the Board of Claims in 1937, and conferred upon it the exclusive power to arbitrate claims arising from contracts entered into by the Commonwealth. *See Emergency Medical Services Council of Northwestern Pennsylvania, Inc. v. Dept. of Health,* 499 Pa. 1, 451 A.2d 206, 209 (1982). The main purpose of the Board of Claims is to provide an independent administrative body and a comprehensive plan to adjudicate claims arising from contracts entered into by the Commonwealth. As we explained in *Emergency Medical Services:*

> The Board of Arbitration of Claims can award monetary damages for breach of contract. The legislature has provided in accordance with its power under Art. 1, Sec. 11 of the Pennsylvania Constitution, that all claims against the Commonwealth arising from contracts shall be heard by the Board of Arbitration of Claims. This Board has exclusive jurisdiction of contract claims pursuant to the Act of May 20, 1937. The Act created a special forum, specified the nature of claims to be considered [claims of or over three hundred dollars], and limited the remedy to monetary damages. *Vespaziani v. Dept. of Revenue,* [ ] 396 A.2d 489 (1979); *Brocker Mfg. & Supply Co., Inc. v. United Bonding & Insurance Company,* [ ] 301 A.2d 438 (1973).

With the passage of the Commonwealth Court Act, and the creation of that court's jurisdiction, the legislature carefully provided that the jurisdiction of the newly created court would not repeal, modify, or supplant the jurisdiction of the Board. When the ban imposed by the common law doctrine of sovereign immunity was abrogated, to clarify the Commonwealth Court's power to intervene in these matters with equitable relief, the legislature modified Section 4651 (72 P.S. § 4651–4) by inserting the word 'exclusive' to emphasize that only the Board should hear these matters.

451 A.2d at 209.

Thus, when the legislature passed the Pennsylvania Sovereign Immunity Act of October 5, 1978, it recognized that claims arising from contracts involving the Commonwealth could sound in both assumpsit and equity, and expressly provided that, regardless of form, these claims should be decided by the Board of Claims. It is thus readily apparent that Pennsylvania's legislative scheme intended to vest the Board of Claims with expansive jurisdiction to decide disputes concerning contracts involving the Commonwealth, regardless of a given case's peculiar path to the Board.

 In this regard, we do not believe our decision directing the Commonwealth Court to transfer the matter to the Board of Claims represents a departure from prior law. We find persuasive the intermediate court decisions that have interpreted Section 4 of the Board of Claims Act (72 P.S. 4651–4) to confer jurisdiction on the Board of Claims for any claim against the Commonwealth arising from its contracts, including those of persons not signatories of the contracts executed by the Commonwealth. For example, in *Armour Rentals, Inc. v. General State Authority*, 4 Pa.Cmwlth. 517, 287 A.2d 862 (1972), unpaid sub-contractors brought suit against the Commonwealth to recover sums not paid to them by the general contractor and its surety due to their financial collapse. The case was filed in the Commonwealth Court in its original jurisdiction, which subsequently determined that the Board of Claims was the proper tribunal to resolve the dispute. The Commonwealth Court looked at Section 1 of the

Board of Claims Act, which states that the duty of the Board of Claims is to arbitrate claims against the Commonwealth arising from contracts entered into by the Commonwealth, and Section 4, and reasoned that:

By both Sections 1 and 4 of the Act, the Board is given jurisdiction to hear and determine 'claims against the Commonwealth arising from contracts.' The reference in Section 1 to contracts entered into *by* the Commonwealth, and that of Section 4 to contracts entered into *with* the Commonwealth import one concept—that the Commonwealth has consented to suit before the Board upon claims based upon obligations of the state arising from contracts made by it. This, we believe, certainly includes any claim based upon alleged contract liability of the Commonwealth regardless of whether the claimant happens to have executed a written contract.

*Id.* at 868.

Similarly, in *Brocker Mfg. & Supply Co., Inc. v. United Bonding & Ins. Co.,* 8 Pa.Cmwlth. 110, 301 A.2d 438 (1973), a subcontractor sued the general contractor, the surety and the Commonwealth in the Commonwealth Court pursuant to its original jurisdiction. The Commonwealth Court thereafter determined that the Board of Claims had jurisdiction to hear the subcontractor's claim against the Commonwealth, noting that the dispute between the contractor and subcontractor to the contract of which the Commonwealth was a party necessarily affected the Commonwealth as it would have to pay for the work completed, and thus fell within the jurisdiction of the Board of Claims.

The doctrine of equitable subrogation is "a means of placing the ultimate burden of a debt upon the one who in good conscience ought to pay it, and is generally applicable when one pays out of his own funds a debt or obligation that is primarily payable from the funds of another." *High–Tech–Enters., Inc. v. General Accident Ins. Co.,* 430 Pa.Super. 605, 635 A.2d 639, 642 (1993). The Board of Claims exercises jurisdiction in both law and equity, and the Board's equity

jurisdiction extends to all cases instituted in the form of contract actions; specifically, quasi-contract claims and claims in *quantum meruit. See Dept. of Environmental Resources v. Winn,* 142 Pa.Cmwlth. 375, 597 A.2d 281 (1991). Because the basis of the equitable subrogation claim asserted by Wausau is the contract between Lang and PennDOT, we see no reason why jurisdiction over the claim should not lie with the Board of Claims. Although not founded on substantive contract law, this claim nevertheless arises from a contract with the Commonwealth. *See City of Philadelphia v. Shapp,* 44 Pa.Cmwlth. 303, 403 A.2d 1043 (1979) (finding the Commonwealth Court lacked jurisdiction to determine contractual claims brought against the Commonwealth by the City of Philadelphia and certain city officials, even though plaintiffs sought equitable relief, as Board of Claims had exclusive jurisdiction). As previously noted, the legislature has clearly provided that the Board of Claims is the exclusive forum for such matters.

We recognize that the vast majority of cases presented to and entertained by the Board of Claims will involve disputes between the agency of the Commonwealth which executed the contract and the other party to the contract. This fact alone, however, is no reason to restrict the otherwise plain meaning of the Board of Claims Act and the intent of the legislature. As the court reasoned in *Gann–Dawson, Inc. v. Commonwealth,* 41 D. & C.2d 355 (Com.Pl. Dauphin County, 1966), "[T]he limited channels through which one having a claim against the State must guide his course or founder upon the shoals of sovereign immunity from suit suggest that the legislature, in impairing this immunity, intended broad jurisdiction in the board over claims against the Commonwealth founded in contracts to which the State itself is a party." *Id.* at 359. A broad, yet fair reading of the Board of Claims Act preserves the statutorily prescribed "exclusive" character of the Board of Claims' jurisdiction while permitting interrelated commercial and equitable claims to be adjudicated in a single forum.[9]

9. Certainly the Board of Claims possesses the necessary expertise to handle a claim for subrogation. *See Keystone Mechanical Systems, Inc.*

Accordingly, where, as here, a plaintiff claims to be owed money premised upon the assignment of rights incident to a contract entered into by the Commonwealth, we hold that the assignment claim and any derivative equitable subrogation claim that "arises from" such contract is within the proper jurisdiction of the Board of Claims. The impetus of Wausau's claim is the contract between PennDOT and Lang. As long as Wausau remains unpaid by PennDOT upon a claim arising out of the PennDOT/Lang contract, we believe the plain meaning of the Board of Claims Act confers jurisdiction upon the Board over the subject matter of this controversy.

Based on the foregoing, this matter is remanded to the Commonwealth Court with direction that the court transfer the matter to the Board of Claims pursuant to Rule 213(f).[10]

---

*v. Commonwealth of Pennsylvania, Department of General Services,* No. 2449 Pa. Bd. Claims (1999) (applying the doctrine of equitable subrogation to hold that a surety who issued a contractor's performance bond was entitled to the money remaining in the contractor's account at the time of contractor's default and was entitled to tender a replacement contractor). "In its normal duties the Board resolves the myriad legal questions which arise regarding issues of the proper interpretation of contractual language." *Id.*

10. PennDOT submits that this matter should not be transferred to the Board of Claims because there can be no recovery by Wausau as a matter of law. Specifically, PennDOT argues that in order for Wausau to assert an equitable subrogation claim, it would have to allege that it was entitled to funds retained by PennDOT. Because PennDOT has already paid Lang, it maintains there is no longer any fund against which to setoff.

Ultimately, the Board of Claims may determine that PennDOT has no corpus that could satisfy Wausau's claim of subrogation. We need not reach this issue on the merits; however, because, based upon our disposition herein, it is properly within the exclusive jurisdiction of the Board of Claims and can be asserted there following remand.