# Driscoll/Intech II v. Scarborough

*Michael Libor,* for plaintiff.
*Roy S. Cohen* and *Shawn Farrell,* for defendants.

SHEPPARD JR., *J.,* February 12, 2008—Presently before the court are preliminary objections filed by Edmund C. Scarborough, International Bonding & Construction Services Inc. (IBCS), and First Mountain Bancorp (FMB) (collectively defendants) seeking dismissal of all counts in the complaint except Count II (breach of bond) against Scarborough. For the reasons discussed, defendants' preliminary objections are sustained, in part, as to Count I (as to IBCS and FMB), and Counts II, IV, V, VI, VII, and VIII.

## BACKGROUND

On October 31, 2005, plaintiff Driscoll/Intech II (D/I)[1] entered into a subcontract agreement with Larry C. McCrae Inc. McCrae was to be the electrical subcontractor on a project known as "Symphony House Mixed Use Facility" (project). The subcontract required that McCrae

---

1. D/I is a joint venture comprised of L.F. Driscoll Company and Intech Construction. Both are Pennsylvania companies engaged in construction management.

provide D/I with a performance and payment bond in the amount of $6,414,323, the value of the subcontract.

On March 15, 2006, defendant Scarborough[2] provided D/I with the contractually required bond on behalf of McCrae. The bond lists Scarborough as the surety,[3] McCrae as the principal, and D/I as the owner/obligee. The bond provides that McCrae and Scarborough are jointly and severally bound to D/I for the performance of the subcontract.[4] As a condition to the bond taking effect, a trust was to be created in the amount of the bond. Thus, Scarborough pledged $6,414,323 worth of assets in an irrevocable trust as collateral, with FMB[5] serving as trustee.

In March of 2007, D/I discovered that McCrae experienced financial difficulty and had not paid for labor and materials for its work on the project, which violated the subcontract. In response, D/I informed McCrae, Scarborough, and IBCS[6] that a breach of the subcontract had occurred and that D/I was considering declaring McCrae in default under the subcontract. Upon notification, Scarborough and IBCS authorized payments to McCrae of the remaining subcontract funds in order to continue work on the project.

---

2. Scarborough is an individual with an address of 1155 15th Street, N.W. Suite 900, Washington, D.C. 20005.

3. Despite purporting to be surety, it is alleged that Scarborough has never been qualified to act as a surety under PA law and does not have a certificate to conduct business in Pennsylvania.

4. See ¶1 of the performance and payment bond.

5. FMB is a Nevada corporation whose principal place of business is in Las Vegas, Nevada 89109.

6. IBCS is a risk-management company, with offices in Winter Haven, FL 33884. IBCS is the claims administrator for the Scarborough bond.

After continuous financial difficulty resulting in defaults on the subcontract by McCrae, D/I negotiated a liquidating agreement, and later two amendments,[7] to the subcontract. Scarborough and IBCS were provided notice and did not object to any agreements or amendments. Under the second amendment, D/I had the option to advance funds, after payment by the owner, to McCrae for some or all of the "cost events"[8] so as to allow McCrae to remain viable on the project. Ultimately, D/I did advance certain funds to McCrae as per this agreement.

Finally, on July 31, 2007, D/I issued a formal notice to McCrae, Scarborough, Scarborough's counsel, and IBCS of default on the subcontract, due to McCrae's continuous financial difficulty. And on August 8, 2007, D/I issued a formal notice of termination effective August 11, 2007 to McCrae, Scarborough, and FMB.

After providing these notices, D/I requested a meeting with Scarborough on August 13, 2007, to discuss plans for completion of the surety's obligations. However, D/I alleges that the meeting was unilaterally cancelled by Scarborough in order to allow him time to "investigate the causes" surrounding the default and termination of McCrae.

IBCS also alerted D/I via letter of its commencement of an investigation into the claim on behalf of Scarborough. D/I alleges that IBCS' letter contained gross and

---

7. As part of the first amendment, McCrae and D/I agreed to certain items, contained in ¶18 of complaint. For the first and second amendments, see exhibits D and E of the complaint, respectively.

8. These "cost events" are the claims set forth in schedule A of the first amendment.

intentional factual errors and improper conclusions, all in an attempt to deceive and extract money from D/I.[9] Finally, on September 10, 2007, the surety denied liability under the bond and no payments were made to D/I.

D/I instituted this litigation on September 25, 2007, alleging breach of contract, breach of bond, fraudulent misrepresentation, negligent misrepresentation, violation of good faith and fair dealing, alter-ego liability, and requesting equitable relief. On October 26, 2007, defendants filed the preliminary objections that are now before the court, seeking dismissal of the complaint based upon the legal insufficiency of Counts I, II, VI, VII, and VIII and the "gist of the action" doctrine for Counts IV and V.[10]

## DISCUSSION

In considering preliminary objections, "[A]ll material facts set forth in the complaint as well as all inferences reasonably deducible therefrom are admitted as true for the purpose of this review." [11] "The question presented by a demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible." [12] Any doubts as to whether a demurrer should be sustained, shall be resolved in favor of overruling it.[13] "In ruling on preliminary objections, the focus of the inquiry is the

---

9. See ¶¶30-31 of complaint.

10. Note that the plaintiff accidentally skipped Count III in the complaint and therefore the court will address the counts as stated in the complaint, omitting mention of Count III.

11. *Employers Insurance of Wausau v. PennDOT,* 581 Pa. 381, 389 n.5, 865 A.2d 825, 830 n.5 (2005).

12. *Id.*

13. *Id.*

pleadings as a court must sustain preliminary objections only where it is clear and free from doubt from all the facts pleaded that the pleader will be unable to prove facts legally sufficient to establish [its] right to relief." [14]

## I. *IBCS and FMB Are Not Parties to the Subcontract*

In Count I, D/I asks the court to find that the subcontract, bond agreement, and trust agreement merge together as a single agreement in order to hold the defendants, all of which are not parties to the subcontract itself, obligated to D/I under the subcontract. The court agrees that the subcontract, bond agreement, and trust merge into one overall agreement, but refuses to hold certain parties accountable for obligations not bargained for (contemplated by such parties).

"If contracting parties choose, they may express their agreement in one or more writings and, in such circumstances, the several documents are to be interpreted together, each one contributing (to the extent of its worth) to the ascertainment of the true intent of the parties." [15] Section 1 of the performance bond states:

"The contractor (McCrae) and the surety (Scarborough), jointly and severally, bind themselves, their heirs; executors, administrators, successors and assigns to the Owner (D/I) for the performance of the construction contract (subcontract), *which is incorporated herein by reference.*" (parenthetical and emphasis added)

14. *DeStefano & Assocs. v. Cohen,* 2002 Phila. C.C.P. Lexis 54, *8 (2002).

15. *International Milling Co. v. Hachmeister Inc.,* 380 Pa. 407, 417-18, 110 A.2d 186, 191 (1955).

Because the subcontract itself specifically required a performance and payment bond and said bond includes the above provision, specifically referencing the underlying subcontract, the court finds that the subcontract is incorporated into the bond. Although the trust is not "created" in the bond agreement itself, but is merely listed as a requirement for the bond's effectiveness,[16] the court finds that the trust is incorporated into the bond itself because of the interdependence and interrelatedness between the two agreements.

Having established integration, the court now addresses which parties are held liable under the terms of the subcontract. Under ¶1 of the performance and payment bond, Scarborough obligated himself to D/I for McCrae's performance under the subcontract. However, the same is *not* true for IBCS and FMB. IBCS is merely listed in the "affidavit of individual surety"[17] as Scarborough's risk management company, charged with handling all claims under the bond. IBCS has not obligated itself under the terms of the subcontract and its status as an agent of Scarborough does not result in such obligation. Likewise, FMB, as trustee of a trust that was required for the bond to take effect, never obligated itself on the subcontract. FMB's obligations are strictly fiduciary in nature, as evidenced by the "irrevocable trust receipt."[18]

Therefore, the claims against IBCS and FMB in Count I are dismissed.

---

16. The bond's only reference to the trust is in ¶13 and ¶16 of the performance bond and payment bond, respectively. Such reference is: "Not valid without attached Trust Receipt."

17. See exhibit B of the complaint.

18. *Id.*

## II. *IBCS and FMB Are Not Parties to the Bond Agreement*

The court grants defendants' preliminary objection and dismisses Count II as to IBCS and FMB.[19]

## III. *Counts IV (Fraudulent Misrepresentation) and V (Negligent Misrepresentation) Are Dismissed Pursuant to the "Gist of the Action" Doctrine*

The "gist of the action" doctrine bars "tort claims that: (1) arise solely from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where the liability stems from a contract; and (4) where the tort essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of the contract."[20] The doctrine concerns itself with the "essential ground" or material part of the entire complaint, while precluding plaintiffs from casting ordinary breach of contract claims into tort claims.[21]

D/I's complaint alleges various misrepresentations[22] made by Scarborough and IBCS before, during, and after entering into the subcontract and bond.[23] The complaint also alleges breach of contract claims. The court

19. It is clear that Scarborough, as surety, has obligations under the bond agreement. However, IBCS and FMB do not have any obligations under the bond agreement. See section I of this opinion for analysis.

20. *City of Phila. v. Human Servs. Consultants,* 2004 Phila. C.C.P. Lexis 26, *7 (2004).

21. *Id.* at *6; *eToll Inc. v. Elias/Savion Advertising Inc.,* 811 A.2d 10, 15 (Pa. Super. 2002).

22. See complaint ¶¶54-57, 60-63.

23. This court has already ruled that IBCS was not a party to any contract with D/I.

finds that the essential nature of the complaint is based upon a breach of contract theory. Thus, contract law as opposed to tort law should control.

In applying the "gist of the action" test in a fraud claim, it is relevant to distinguish between "fraud in the inducement" and "fraud in the performance" of a contract. In Pennsylvania, a plaintiff's claim of fraud in the inducement may escape dismissal under the "gist of the action" doctrine because "fraud to induce a person to enter into a contract is generally collateral to (*i.e.,* not 'interwoven' with) the terms of the contract itself."[24] However, in *eToll Inc. v. Elias/Savion Advertising,* 811 A.2d 10, 15 (Pa. Super. 2002), the Superior Court of Pennsylvania held that the "gist of the action" doctrine should apply in the "fraud in the performance" context.[25]

Though some of the fraud alleged stems from social policy (*i.e.,* general duty to exercise reasonable care in making representations that could result in reliance), the overall "gist" of the complaint sounds in contract. Specifically, the fraud described in paragraph 55 of the complaint (subparagraphs b.-j.)[26] mirrors the performance obligations under the subcontract and bond. This is a prime example of alleged "fraud in the performance" of a contract, which is well within the "gist of the action" doctrine's grasp. Because Count IV is duplicative of

---

24. *eToll,* 811 A.2d at 17.

25 *Id.* at 20.

26. Paragraph 55, subparagraphs a-j of the complaint contains plaintiff's misrepresentation allegations. Subparagraph (a) is the plaintiff's best example and argument for "fraud in the inducement," however; exhibit D in the subcontract requires that the bond be issued by a surety licensed in the Commonwealth of PA. Therefore, this allegation is also implicated in the underlying subcontract.

Counts I and II and falls within the purview of the "gist of the action" doctrine, the court dismisses it.

Plaintiff's claim under Count V (negligent misrepresentation) is identical to Count IV for present purposes. The negligent misrepresentation allegations are rooted in the defendants' contractual obligations under the subcontract. The court dismisses Count V pursuant to the "gist of the action" doctrine.

### IV. *Count VI (Breach of Good Faith and Fair Dealing) Is Dismissed*

D/I has also asserted a breach of the implied duty of good faith and fair dealing against all defendants. This court has previously held that "a breach of the covenant of good faith is nothing more than a breach of contract claim and that separate causes of action cannot be maintained for each, even in the alternative."[27]After reviewing the complaint, the court finds that this claim is duplicative of, and inherently embodied in, D/I's breach of contract and bond claims. Therefore, this demurrer is sustained and Count VI is dismissed.

### V. *Plaintiff Has Failed To Allege a Proper Alter-Ego Liability Claim*

In Pennsylvania, there is a strong presumption against disregarding the corporate form.[28] "Piercing the corporate veil is the exception, and courts should start from the general rule that the corporate entity should be upheld

---

27. *JHE Inc v. SEPTA,* 2002 Phila. C.C.P. Lexis 78, *21 (2002).

28. *Miners Inc. v. Alpine Equipment Corp.,* 722 A.2d 691, 694 (Pa. Super. 1998).

unless specific, unusual circumstances call for [such] an exception."[29] Pennsylvania courts consider the following factors in determining whether to pierce the corporate veil: (1) undercapitalization, (2) failure to adhere to corporate formalities, (3) substantial intermingling of corporate and personal affairs, and/or (4) use of the corporate form to perpetrate a fraud.[30]

The complaint alleges that Scarborough, as CEO of IBCS, used IBCS as a "sham" entity in order to perpetuate a fraudulent delay in completion of Scarborough's own obligations. Though this is one of the above cited factors to be considered by the court, the complaint is silent as to the remaining factors. At this stage, "it is essential that the facts the pleader depends upon to show liability be averred."[31] The court finds that liability cannot stem from merely two allegations that an "entity" caused a fraudulent delay by (1) requesting information previously submitted to its CEO and (2) conducting a formal investigation into the facts surrounding McCrae's breach of the subcontract. As pled, the complaint has failed to meet the minimum threshold to allow D/I's claim of alter ego/piercing the corporate veil liability to go forward. The court grants this demurrer and Count VII is dismissed.

---

29. *JK Roller Architects LLC v. Tower Invs. Inc.,* 2003 Phila. C.C.P. Lexis 40, *7 (2003).

30. *Miller v. Brass Rail Tavern,* 702 A.2d 1072, 1075 (Pa. Super. 1997).

31. *Frey v. Dougherty,* 286 Pa. 45, 48, 132 A. 717, 718 (1926).

## VI. *Plaintiff's Request for Equitable Relief Is Denied*

In Pennsylvania, courts consider six "essential prerequisites" before ordering preliminary injunctive relief to a party. These are:

"(1) the injunction is necessary to prevent immediate and irreparable harm that cannot be adequately compensated by damages;

"(2) that greater injury would result from refusing an injunction than from granting it, and, concomitantly, that issuance of an injunction will not substantially harm other interested parties in the proceedings;

"(3) that a preliminary injunction will properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct;

"(4) that the activity it seeks to restrain is actionable, that its right to relief is clear, and that the wrong is manifest, or, in other words, must show that it is likely to prevail on the merits;

"(5) that the injunction it seeks is reasonably suited to abate the offending activity; and

"(6) that a preliminary injunction will not adversely affect the public interest." [32]

The burden is on the moving party to demonstrate these prerequisites before relief is granted.[33]

One factor is "whether an immediate and irreparable harm is actually threatened." [34] First, the injury must be

---

32. *Warehime v. Warehime,* 580 Pa. 201, 209-10, 860 A.2d 41, 46-47 (2004).

33. *Id.* at 47.

34. *New Castle Orthopedic Associates v. Burns,* 481 Pa. 460, 465, 392 A.2d 1383, 1385 (1978).

imminent. According to the complaint, the trust (containing the "only known source of funds available to Scarborough and McCrae to make good on the outstanding obligations of the subcontract and bond") was to expire on August 17, 2007. Thus, as of the date of this opinion, the alleged "harm" has occurred and is in the past.

Second, the injury must be an "irreparable" harm. "An injury is regarded as 'irreparable' if it will cause damage which can be estimated only by conjecture and not by an accurate pecuniary standard."[35] "The plaintiff must demonstrate the likelihood of a loss that is not entirely ascertainable and compensable by money damages."[36] Here D/I's argument for equitable relief must fail. Quite simply, this is a breach of contract case. D/I has alleged that defendants have both breached the subcontract and underlying bond. The bond, as a guarantee for the completion of the subcontract, has a value attached to it by way of the trust in the amount of $6,414,323. There is no conjecture involved here. If found to have breached the bond, Scarborough as surety must provide funds to cover the additional expenses incurred by D/I as a result of McCrae's breach of the subcontract. Any remaining damages flowing from a breach of the subcontract can be calculated under the general principles of contract law.

The court should refrain from issuing a preliminary injunction unless there are reasonable grounds to believe that the situation is of an urgent necessity.[37] Because D/I

35. *Sovereign Bank v. Harper,* 449 Pa. Super. 578, 593, 674 A.2d 1085, 1093 (1996).

36. *Sheridan Broadcasting Networks v. NBN Broadcasting,* 693 A.2d 989, 995 (Pa. Super. 1997).

37. *New Castle,* 481 Pa. at 465, 392 A.2d at 1385.

has failed to demonstrate that the harm is both immediate and irreparable, the court finds that equitable relief is not warranted. Count VIII is dismissed.

## CONCLUSION

For the foregoing reasons, defendants' preliminary objections are sustained in part, as to Count I (breach of subcontract) with regards to IBCS and FMB; Count II (breach of bond); Count IV (fraudulent misrepresentation); Count V (negligent misrepresentation); Count VI (breach of implied duty of good faith and fair dealing); Count VII (alter-ego); and Count VIII (request for equitable relief). An order consistent with this opinion will be issued.

## ORDER

And now, February 12, 2008, upon consideration of the preliminary objections of all defendants, the response in opposition, the respective memoranda, all other matters of record, and in accord with the opinion issued contemporaneously, it is ordered that the preliminary objections are sustained, in part, as to the following claims: breach of contract against IBCS and FMB (Count I), breach of bond against IBCS and FMB (Count II), fraudulent misrepresentation (Count IV), negligent misrepresentation (Count V), breach of implied duty of good faith and fair dealing (Count VI), alter-ego liability (Count VII), and the request for equitable relief (Count VIII). The remaining objections are overruled.