*1256 DISSENTING OPINION BY
JUDGE McCullough
I, must respectfully dissent from the Majority’s decision to sustain the Pennsylvania Game Commission’s (Commission) sovereign immunity based preliminary objections, and thereby dismissing Carl Roe’s (Petitioner’s) complaint alleging breach of contract and/or promissory es-toppel relative to the “Agreement and Release” and “Amended Agreement and Release” that promised, inter alia, a $220,000.00 payment for his “eariier-than-intended” retirement, as well as a purported release of claims and other consideration. I believe the issue of whether the Commission can agree to pay an “at-will” employee consideration to retire “earlier than he intended,” even after his resignation, should not be disposed of by preliminary objections.
The record demonstrates that the waters in which this case has traversed are murky and that, at the very least, this matter should not be disposed of on preliminary objections as to sovereign immunity. As noted in the Amended Complaint, both the Commission’s General Counsel and the Office of Attorney General (OAG) approved the original Agreement and Release as to both form and legality. General Counsel to the Commission also approved the Amended Agreement and Release and, as. averred in the Amended Complaint, OAG is deemed to have approved that document as well by its purported inaction.[1] Conversely, however, I do agree with the Commission that this case should be heard by the Board of Claims and therefore would sustain the Commission’s preliminary objections as to this Court’s jurisdiction.
For the following reasons, I believe that the correct course to be charted as to sovereign immunity is to overrule the preliminary objections, without prejudice to the Commission to raise them as New Matter, and transfer this case to the Board of Claims.
First, Pennsylvania Rule of Civil Procedure (Pa.R.C.P.) No. 1030(a) provides that all affirmative defenses, including immunity from suit, are to be raised as New Matter. While cast as preliminary objections, the Commission is clearly raising the affirmative defense of sovereign immunity. Pa.R.C.P. No. 1030(a) requires this to be raised as New Matter so that a factual determination of the issues may be made. That is especially important in this case, given the approval of the initial agreement by, not only counsel to the Commission but also the OAG, and the approval of the Amended Agreement, again by the Commission’s General Counsel and the alleged “deemed approval” thereof by the OAG. There appears to be factual issues that need to be resolved and the preliminary objections cannot be disposed of based upon the face of the complaint.
Further, assuming arguendo that sovereign immunity would apply to this case, the aforesaid approvals by the Commission’s Counsel and the approval and “deemed approval” by the OAG’s office, as well as the unanimous endorsement of both agreements by the Commission’s board members, if proven, may well support a contention that such immunity has been waived. Accordingly, even if it is permissible for the Commission to raise sovereign immunity via preliminary objections, there is an important factual issue, i.e,, waiver of immunity, that must be resolved. Hence, the Commission’s preliminary ob *1257 jections raising sovereign immunity must be dismissed for this reason as well.[2]
*1258 Second, this matter should be transferred to the Board of Claims for disposition, including the issue of sovereign immunity and waiver thereof (if raised via New Matter), and all other issues attendant to this case. The General Assembly, through its 2002 amendment to the Commonwealth Procurement Code,[3] has reiterated the general investiture of monetary claims against the Commonwealth and its agencies, such as the Commission, with the Board of Claims.
It is therefore the province of the Board of Claims, in the first instance, to resolve any issues related to sovereign immunity or other issues that may bear on its capacity to entertain and/or dispose of this case. This position is in keeping with long line of settled precedent whereby the appellate courts of this Commonwealth treat adjudicative agencies with deference.
This matter is undoubtedly premised upon two agreements between Petitioner and the Commission, and our Supreme Court has made clear that “the exception to sovereign immunity pertaining to Board-of-Claims jurisdiction defines the extent of the Commonwealth’s statutory exception from sovereign immunity for claims arising from contract.” Scientific Games International, Inc. v. Commonwealth, 620 Pa. 175, 66 A.3d 740, 755 (2013); see also Employers Insurance of Wausau v. Department of Transportation, 581 Pa. 381, 865 A.2d 825, 831-34 (2005); Armenti v. Pennsylvania State System of Higher Education, 100 A.3d 772, 777 (Pa.Cmwlth.2014); Telwell, Inc. v. Public School Employees’ Retirement System, 88 A.3d 1079, 1089 n. 17 (Pa.Cmwlth.2014); Dubashas v. Department of Corrections, 81 A.3d 167, 175 (Pa.Cmwlth.2013).
Thus, even where sovereign immunity has been waived for claims related to contracts with Commonwealth agencies, that waiver is confined to claims made directly to the Board of Claims. Scientific Games, 66 A.3d at 756. Furthermore, while under section 761 of the Judicial Code[4] this Court has original jurisdiction over civil matters against the Commonwealth, and the relevant statutory exception applies only to claims brought pursuant to the now-repealed Board of Claims Act,[5] section 761 of the Judicial Code does not repeal, modify, or supplant the Board of Claims’ exclusive jurisdiction over contract claims, nor does it constitute an independent waiver of sovereign immunity that would allow us to hear Petitioner’s claims in the first instance. Scientific Games, 66 A.3d at 756 & n. 10; Telwell, 88 A.3d at 1089 n. 17.
The Commission also requested that we dismiss the Amended Complaint because it was improperly filed in this Court. However, Pa.R.C.P. No. 213(f) provides:
When an action is commenced in a court which has no jurisdiction over the subject matter of the action it shall not be dismissed if there is another court of appropriate jurisdiction within the Commonwealth in which the action could originally have been brought but the court shall transfer the action at the cost of the plaintiff to the court of appropriate jurisdiction. It shall be the duty of the prothonotary or clerk of the court in which the action is commenced to transfer the record together with a certified *1259 copy of the docket entries to the protho-notary or clerk of the court to which the action is transferred.
Pa.R.C.P. No. 213(f). The Board of Claims is considered a judicial tribunal under Pa. R.C.P. No. 213 and, therefore, transfer to the Board is warranted as the “court of appropriate jurisdiction.” Employers Insurance of Wausau, 865 A.2d at 830 n. 6; Telwell, 88 A.3d at 1089-90; see also Hanover Insurance Company v. State Workers’ Insurance Fund of the Commonwealth, 35 A.3d 849, 856 n. 8 (Pa.Cmwlth.2012).
Accordingly, I would overrule the Commission’s preliminary objections regarding sovereign immunity, sustain the Commission’s preliminary objections regarding jurisdiction, and transfer this matter to the Board of Claims to dispose of the matter in accordance with this opinion.[6]
Judge Leavitt joins in this dissent.

. The Majority Opinion repeatedly refers to the Agreement and Release and the Amended Agreement and Release as "settlement agreements.”'The Amended Complaint contains no reference to such a categorization of these documents.

. While this matter is before us as to preliminary objections to Petitioner’s Amended Complaint, the Majority also references the Original Complaint, stating that "Roe’s original complaint asserted a single breach of contract claim against the Commission.” (Op. at 1247.) While not specifically incorporated into the Amended Complaint, we note that two exhibits, identified as Exhibits C and E, were incorporated into the Original Complaint filed with this Court,
Exhibit C is a January 30, 2014 letter from the Office of General Counsel (OGC), through its First Executive Deputy General Counsel, noting concern that the agreement was a severance agreement in violation of section 215 of the Administrative Code of 1929, Act of April 9, 1929, P.L, 177, as amended, 71 P.S. § 75. The pertinent sections of the OGC’s letter are as follows:
The office of General Counsel ("OGC”) has concerns that, notwithstanding the form of the Agreement, it is in reality a severance agreement that violates section 215 of The Administrative Code of 1929, 71 P.S. § 75 ("No employe in any administrative department, independent administrative board or commission, or departmental administrative board or commission, employed at a fixed compensation, shall be paid for any extra services, unless expressly authorized by the Executive Board prior to the rendering of such services.”).
Because the Agreement appeared to OGC on its face to constitute a severance agreement in violation of section 215 of the Administrative Code, [Office of Comptroller Operations (OCO)] (through its OGC-designated counsel) asked [the Commission’s] chief counsel for clarification.
In response, [the Commission] informed OCO that the Agreement was intended in part to settle potential claims that Roe might make against [the Commission], OCO responded that the written Agreement did not appear on its face to reflect a purpose to settle threatened or potential claims and, therefore, could not be processed for transmittal to Treasury in the form presented_
⅜⅜‡
Notwithstanding the revisions to the Agreement made by [the Commission] and Roe, OGC remains concerned that the Agreement is in reality an improper severance agreement that violates section 215 of the Administrative Code. We are skeptical that Roe, a strictly at-will employee of [the Commission], has any claims that he could credibly or legitimately make against [the Commission], Rather, OGC is convinced that [the Commission] has agreed to pay Roe $220,000 as compensation to induce him to retire months earlier than he had intended, and to agree to terms of confidentiality respecting his tenure with [the Commission] and the circumstances of his severance. Neither reason would distinguish the Agreement from that which is barred -by section 215.
⅜5 ijt iff
As a final point, we would note that the source of the funds for [the Commission] to make payment under the Agreement would be the Game Fund. Thus, the payment of a $220,000 severance to Roe would come at the expense of other important [the Commission] activities that are conducted under the Game and Wildlife Code [34 Pa.C.S. §§ 101-2965] for the benefit of all' Pennsylvanians. Sportsman, conservationists and countless Pennsylvanians depend on responsible public officials to assure that all-Game Fund dollars are spent only for legally proper purposes.
(Original Complaint, Exhibit C at 1-3.)
Exhibit E is a March 18, 2014 letter signed by Governor Corbett and a school of high ranking legislators to the President of the Commission, three months after Petitioner resigned from his post as Executive Director (a position he held for over eight years), noting that the agreement could be viewed as a severance agreement, that it was in conflict with state law, requesting that the agreement be immediately revoked, and demanding the immediate resignation of any member of the Board of Commissioners who refuses to do so. The pertinent part of that letter reads as follows:
We were each shocked and extremely disappointed to learn that the Board of Commissioners had approved what amounts to a $220,000 severance payment for your former Executive Director. This payment was never voted on or announced publicly; appears to have no basis of justification; and also appears to be *1258 in conflict with state law. In our view, such a payment is a gross abuse of the Commission’s fiduciary responsibility.
(Original Complaint, Exhibit E at 1.)

.62 Pa.C.S. §§ 101-2311.

. 42 Pa.C.S. § 761.

. In addition to the Commission's third and fourth preliminary objection, which I have not addressed in this opinion, the Board of Claims is also the proper venue for the resolution of the Commission’s argument that the Board is without jurisdiction over Petitioner’s contract claims because he did not comply with the pre-litigation administrative remedies procedure outlined in section 1712.1 of the Commonwealth Procurement Code, including the requirements that he file a claim with the contracting officer within six months of the breach, wait for a written response from the contracting officer, and then file a claim with the Board within 15 days. See 62 Pa.C.S. § 1712.1. The question of whether Petitioner has complied with section 1712.1 is not apparent from the face of the Amended Complaint; Petitioner alleges only that the Commission breached the Amended Agreement on March 18, 2014 by refusing to pay the agreed upon consideration of $220,000. (Amended Complaint ¶34.) Resolution of this objection therefore requires the development of an evidentiary record before the Board of Claims following transfer. See Pa.R.C.P. No. 1028(c)(2) ("If an issue of fact is raised [in a preliminary objection], the court shall consider evidence by depositions or otherwise."); Ferguson Electric Co., Inc. v. Department of General Services, 3 A.3d 681, 688 (Pa.Cmwlth.2010) (concluding that the Board of Claims may resolve a preliminary objection raising the issue of whether the contracting party complied with the section 1712.1 procedure following evidentiary hearings).