Carl Roe,                               :
                    Petitioner         :
                                        :
        v.                              :
                                        :
The Pennsylvania Game Commission,       :    No. 409 M.D. 2014
                    Respondent         :    Argued: December 9, 2015


BEFORE:     HONORABLE DAN PELLEGRINI, President Judge[1]
            HONORABLE RENÉE COHN JUBELIRER, Judge
            HONORABLE ROBERT SIMPSON, Judge
            HONORABLE MARY HANNAH LEAVITT, Judge[2]
            HONORABLE P. KEVIN BROBSON, Judge
            HONORABLE PATRICIA McCULLOUGH, Judge
            HONORABLE ANNE E. COVEY, Judge


OPINION BY
JUDGE COVEY                              FILED: September 22, 2016


        The Pennsylvania Game Commission (Commission) preliminarily objects to Carl Roe's (Roe) Amended Complaint averring three contract breach claims and a promissory estoppel claim against the Commission.  The Commission asserts that Roe's claims, *inter alia*, are barred by sovereign immunity or, in the alternative, fall under the exclusive jurisdiction of the Board of Claims (Board).  Essentially, the issue before the Court is whether sovereign immunity is a bar to Roe's claims.  After review, we sustain the Commission's preliminary objections and dismiss Roe's Amended Complaint without prejudice.

---

[1] This case was assigned to the opinion writer on or before December 31, 2015, when President Judge Pellegrini assumed the status of senior judge.

[2] This case was assigned to the opinion writer before January 4, 2016, when Judge Leavitt became President Judge.

According to the Amended Complaint, Roe served as the Commission's Executive Director from December 30, 2005 until January 17, 2014. On June 25, 2013, Roe entered into an Agreement and Release (Original Agreement) with the Commission's Board of Commissioners (Commissioners), under which Roe agreed to retire before January 31, 2014,[3] waive and release any and all claims he may have against the Commission and the Commissioners, and keep confidential any and all communications with the Commission during his tenure as Executive Director. In addition to paying Roe $220,000.00 "no later than two weeks after the retirement date," the Commission agreed to keep its communications with Roe confidential. Amended Complaint Ex. A, Original Agreement at 1. The Original Agreement stated that the payment "shall not be compensation but shall be consideration for the obligations to be fulfilled by Roe as set forth [t]herein." *Id.* It further provided that the arrangement was "to allow for the orderly transition of the Executive Director, while not monetarily penalizing Roe for announcing his retirement early enough to allow for a reasonable search and appointment of a new Executive Director." *Id.* at 2. The Original Agreement was signed by all eight Commissioners, and was approved as to form and legality by the Commission's Chief Counsel and the Attorney General's Office (OAG). Roe retired from the Commission effective January 17, 2014.

Thereafter, the Commission asked Roe to sign an Amended and Restated Agreement and Release (Amended Agreement) "to modify some of the language of the [Original] Agreement." Amended Complaint ¶ 24. The Amended Agreement reflected that Roe retired on January 17, 2014 and provided that he would be paid the $220,000.00 "as soon as practically possible." Amended Complaint Ex. B, Amended Agreement at 1. The Amended Agreement specified that its intent was "to settle

---

[3] Roe's tenure was supposed to end in April 2015.

potential legal claims that the parties might have made against each other" and that the Commission's payment would be "consideration for settlement of potential legal claims." *Id.* Like the Original Agreement, the Amended Agreement provided that the payment was not compensation. Roe and the eight Commissioners signed the Amended Agreement on January 27, 2014, and it was approved as to form and legality by the Commission's Chief Counsel, but it was not executed by the OAG or the Comptroller.[4]

Roe's original complaint asserted a single breach of contract claim against the Commission. Following the filing of preliminary objections, Roe filed the Amended Complaint. In the Amended Complaint, Roe alleges that the Commission breached the Original Agreement and the Amended Agreement (collectively, Agreements) when it refused to pay him $220,000.00 despite that he had retired and otherwise complied with the terms of the Agreements. The Amended Complaint contains four claims against the Commission: Count I – breach of the Original Agreement; Count II – breach of the Amended Agreement; Count III – breach of the Original Agreement, as amended by the Amended Agreement; and, Count IV – promissory estoppel arising from Roe's detrimental reliance on the Commission's promises. The Commission filed preliminary objections to Roe's Amended Complaint.

This Court's review of preliminary objections is limited to the pleadings. *Pa. State Lodge, Fraternal Order of Police v. Dep't of Conservation & Natural Res.*, 909 A.2d 413 (Pa. Cmwlth. 2006), *aff'd*, 924 A.2d 1203 (Pa. 2007).

---

[4] The Amended Agreement denoted that it would amend the Original Agreement effective "[u]pon execution by all parties, approved as to form and legality by agency counsel and the [OAG], as well as approved by the Comptroller[.]" Amended Agreement at 2. Roe asserts that, under Section 204(f) the Commonwealth Attorney's Act, Act of October 15, 1980, P.L. 950, *as amended*, 71 P.S. § 732-204(f), the Amended Agreement was deemed approved after the OAG's failure to act within 30 days.

3

[This Court is] required to accept as true the well-pled averments set forth in the . . . complaint, and all inferences reasonably deducible therefrom. Moreover, the [C]ourt need not accept as true conclusions of law, unwarranted inferences from facts, argumentative allegations, or expressions of opinion. In order to sustain preliminary objections, it must appear with certainty that the law will not permit recovery, and, where any doubt exists as to whether the preliminary objections should be sustained, the doubt must be resolved in favor of overruling the preliminary objections.

*Id.* at 415-16 (citations omitted). Herein, this Court's review is limited to the averments in Roe's Amended Complaint.[5]

The Commission first argues that it is immune from Roe's claims because the General Assembly has only waived sovereign immunity over contract claims against Commonwealth agencies to the extent jurisdiction over those claims lies with the Board and, in this case, the Board lacks jurisdiction.[6,7]

---

[5] Judge McCullough in her Dissenting Opinion references a letter (Letter) which is attached as an exhibit to and is incorporated by reference in Roe's original complaint. The Commission's preliminary objections now before this Court object only to Roe's Amended Complaint. The Letter is not attached to nor mentioned in Roe's Amended Complaint. This Court's analysis of the Commission's preliminary objections is, as required, limited to the allegations in Roe's Amended Complaint.

[6]     [U]nder the Pennsylvania Rules of Civil Procedure, immunity from suit is an affirmative defense that must be pled in a responsive pleading under the heading new matter, not as a preliminary objection. We recognize that courts have permitted limited exception to this rule and have allowed parties to raise the affirmative defense of immunity as a preliminary objection. The affirmative defense, however, must be clearly applicable on the face of the complaint. **Where the plaintiff does not object to the improper procedure, courts have ruled on the affirmative defense of immunity raised by preliminary objections**.

*Smolsky v. Pa. Gen. Assembly*, 34 A.3d 316, 321 n.7 (Pa. Cmwlth. 2011) (citations omitted; emphasis added). Here, Roe did not object to the Commission's improper procedure.

[7] The Commission also contends that Roe's claims are barred by sovereign immunity because Roe failed to first present his claim to the Commission as required by the Procurement Code, thereby depriving the Board of jurisdiction.

4

Article I, Section 11 of the Pennsylvania Constitution states, in pertinent part, that "[s]uits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct." Pa. Const. art. I, § 11. The General Assembly has declared that the Commonwealth "shall continue to enjoy sovereign immunity . . . and remain immune from suit except as the General Assembly shall specifically waive the immunity." 1 Pa.C.S. § 2310.

With the enactment of what was commonly referred to as the Board of Claims Act,[8] the General Assembly gave the Board "**exclusive jurisdiction** to hear and determine **all claims against the Commonwealth arising from contracts** hereafter entered into with the Commonwealth, where the amount in controversy amounts to $300.00 or more." Section 4 of the former Board of Claims Act, 72 P.S. § 4651-4 (emphasis added). "The exclusive remedy of monetary damages in the Board . . . constituted a limited waiver of sovereign immunity." *Ezy Parks v. Larson*, 454 A.2d 928, 934 (Pa. 1982). Thus, "[a]lthough the Commonwealth traditionally had sovereign immunity from suit, the establishment of the Board . . . waived that immunity by providing a tribunal whose specific duty was to entertain contract actions against the Commonwealth." *Shovel Transfer & Storage, Inc. v. Simpson*, 565 A.2d 1153, 1155 (Pa. 1989).

In 2002, the General Assembly repealed the Board of Claims Act and re-enacted the Board's enabling jurisdiction under the Commonwealth Procurement

---

In the alternative, the Commission argues that if it is determined that the Commission does not enjoy immunity from Roe's action, the Amended Complaint should nevertheless be dismissed because the Board has exclusive jurisdiction over contract claims against the Commonwealth and its agencies. The Commission also maintains that if this Court retains jurisdiction over this matter, the Amended Complaint should be dismissed because Roe's verification does not conform to Pa.R.C.P. No. 1024(a) (relating to the signer's personal knowledge, information or belief), and/or that Count II of the Amended Complaint should be dismissed because Roe failed to allege that its conditions precedent (i.e., OAG and Comptroller approval) had been met.

[8] Act of May 20, 1937, P.L. 728, *as amended*, 72 P.S. §§ 4651-1 – 4651-10, repealed by Section 21(a) of the Act of December 3, 2002, P.L. 1147.

Code (Procurement Code).[9] With the 2002 Procurement Code amendments, the General Assembly preserved the Board's general structure and function and, in Section 1702(a) of the Procurement Code, declared:

> **(a) General rule.--**The General Assembly under section 11 of Article I of the Constitution of Pennsylvania **reaffirms sovereign immunity**, and, except as otherwise provided in this chapter, no provision of this part shall constitute a waiver of sovereign immunity for the purpose of 1 Pa.C.S. § 2310 (relating to sovereign immunity reaffirmed; specific waiver) or otherwise.
>
> **(b) Exception.--**The General Assembly under [S]ection 11 of Article I of the Constitution of Pennsylvania does **hereby waive sovereign immunity as a bar to claims against Commonwealth agencies brought in accordance with** [**S]ections** 1711.1 [of the Procurement Code] (relating to protests of solicitations or awards) and **1712.1 [of the Procurement Code] (relating to contract controversies)** and Subchapter C (relating to [the Board]) but only to the extent set forth in this chapter.

62 Pa.C.S. § 1702 (text emphasis added). Consequently, sovereign immunity is waived for claims over which the Board has exclusive jurisdiction. Therefore, the issue before us becomes whether the Board has exclusive jurisdiction over the Agreements underlying this case.

Section 1724(a)(1) of the Procurement Code provides that the Board shall have **exclusive jurisdiction** to arbitrate **claims arising from "[a] contract entered into by a Commonwealth agency** . . . and filed with the [B]oard in accordance with [S]ection 1712.1(a) [of the Procurement Code] (relating to contract controversies)."[10] 62 Pa.C.S. § 1724(a)(1) (emphasis added). In *Dubaskas v.*

---

[9] 62 Pa.C.S. §§ 101-2311.

*See* Sections 2, 9, 10, 12 and 12.2 of the Act of December 3, 2002 P.L. 1147 (amending the relevant provisions of the Procurement Code); Section 21(a) of the Act of December 3, 2002, P.L. 1147 (repealing the Board of Claims Act).

[10] There are two other categories of claims over which the Board has exclusive jurisdiction - contracts wherein the parties agreed to use the Board to resolve claims (*see* 62 Pa.C.S. § 1724(a)(2))

*Department of Corrections*, 81 A.3d 167 (Pa. Cmwlth. 2013), this Court stated: "[T]he Board has jurisdiction over 'claims arising from *certain* contracts entered into by a Commonwealth agency,'[11] and there are still 'jurisdictional prerequisites' that must be met in order for the Board to exercise its jurisdiction over a particular claim." *Id.* at 176 (quoting *Scientific Games Int'l, Inc. v. Dep't of Revenue*, 66 A.3d 740, 756, 760 (Pa. 2013)). The Court concluded that "with respect to Section 1724(a)(1) of the [Procurement] Code, **the . . . definitions of 'contract' and 'services' in Section 103 of the [Procurement] Code function as components of the** 'jurisdictional **prerequisites**' . . . ." *Id.* at 177 (emphasis added).

The Procurement Code defines "[c]ontract," in relevant part, as "[a] type of **written agreement** . . . **for the procurement . . . of** . . . services . . . **executed by all parties** in accordance with the act of October 15, 1980 (P.L. 950, No. 164), known as the Commonwealth Attorneys Act." 62 Pa.C.S. § 103 (emphasis added). "**Services**" are defined in relevant part therein as "[t]he **furnishing of labor, time or effort** by a contractor not involving the delivery of a specific end product . . . ." *Id.* (emphasis added).

---

and controversies arising from real property contracts where the Commonwealth agency is the respondent (*see* 62 Pa.C.S. § 1724(a)(3)). The Board also has concurrent jurisdiction over disputes arising from certain contracts where the Commonwealth agency is the claimant. *See* 62 Pa.C.S. § 1724(b).

[11] Despite the Supreme Court's statement in *Employers Insurance of Wausau v. Department of Transportation*, 865 A.2d 825 (Pa. 2005), that Section 4 of the Board of Claims Act and Section 1724(a) of the Procurement Code were "substantively identical," *id.* at 830 n.7, in that the Board has "expansive jurisdiction to decide disputes concerning contracts involving the Commonwealth, regardless of a given case's peculiar path to the Board[,]" *id.* at 833, **the 2002 Amendment and subsequent case law have clearly limited the Board's jurisdiction**. For example, before 2002, the Board had jurisdiction to hear disputes arising from *all Commonwealth* contracts meeting the $300.00 threshold. After 2002, the Board's jurisdiction was limited to Commonwealth *agency* contract disputes seeking *monetary* relief. Further, because the Procurement Code's existing definition of "services" excluded employment contracts and collective bargaining agreements, when the Board's enabling act was placed under the Procurement Code, those types of contracts were removed from the Board's jurisdiction by operation of law.

The subject Agreements are settlement agreements. The Original Agreement was designated "Agreement and Release." Amended Complaint Ex. A. The Amended Agreement was entitled "Amended and Restated Agreement and Release." Amended Complaint Ex. B. A settlement agreement, like a "consent decree," is "in essence a contract binding the parties thereto." *Commonwealth v. U.S. Steel Corp.*, 325 A.2d 324, 328 (Pa. Cmwlth. 1974) (quoting *Commonwealth v. Rozman*, 309 A.2d 197, 199 (Pa. Cmwlth. 1973)). Accordingly, "settlement agreements are governed by contract law principles." *Lesko v. Frankford Hosp.-Bucks Cnty.*, 15 A.3d 337, 341-42 (Pa. 2011). However, jurisdiction does not automatically rest solely with the Board simply because a contract is implicated in the parties' dispute. *Keenheel v. Pa. Sec. Comm'n,* 565 A.2d 1147 (Pa. 1989). Whether a settlement agreement comes within the Board's jurisdiction depends upon the nature of the claim underlying the settled matter. *See Armenti v. Pa. State Sys. of Higher Educ.*, 100 A.3d 772 (Pa. Cmwlth. 2014); *Porreco v. Maleno Developers, Inc.*, 717 A.2d 1089 (Pa. Cmwlth. 1998)*; see also Cicchiello v. Dep't of Corr.* (Pa. Cmwlth. No. 83 C.D. 2015, filed August 5, 2015);[12] *Tome v. Dep't of Pub. Welfare* (Pa. Cmwlth. No. 557 C.D. 2008, filed July 20, 2009).[13]

Here, the Agreements provided that Roe and the Commission agreed, in exchange for $220,000.00, that Roe would: (1) retire early, (2) waive all potential legal claims, and (3) keep confidential communications that occurred while he was

[12] While this Court's unreported memorandum opinions may not be cited as binding precedent, they may be cited "for [their] persuasive value[.]" Section 414 of the Commonwealth Court's Internal Operating Procedures.

This Court held in *Cicchiello* that because the definition of "services" in Section 103 of the Procurement Code, 62 Pa.C.S. § 103, expressly excludes from the Board's jurisdiction disputes arising from employment contracts or collective bargaining agreements, the Board lacked jurisdiction over a settlement agreement arising from a collective bargaining agreement dispute.

[13] This Court held in *Tome* that because Section 1724(c) of the Procurement Code, 62 Pa.C.S. § 1724(c), expressly excludes Medical Assistance claims from the Board's jurisdiction, the Board lacked jurisdiction over a dispute involving a Medical Assistance claim settlement.

8

Executive Director. With respect to the Agreements' early retirement term, this Court has expressly stated that "nothing in the Procurement Code supports the proposition that a contract which fixes the duration of employment is one for 'services'. . . ." *Armenti*, 100 A.3d at 776.

The issue was raised but not addressed in *Tome*, an unreported opinion, wherein, this Court reviewed whether the Board had jurisdiction over interest and attorney's fees arising from the Department of Public Welfare's (DPW) purported breach of a settlement agreement. Although the Board recognized that it lacked jurisdiction in that case because the settlement agreement vested jurisdiction in DPW's Bureau of Hearings and Appeals (BHA), the Board claimed that "the Procurement Code generally provides the Board with exclusive jurisdiction over claims arising from contracts entered into by a Commonwealth agency, like the Settlement Agreement at issue[.]"[14] *Tome*, slip. op. at 2. "DPW disagreed . . . that [the Board] generally retains jurisdiction over all settlement agreements . . . because settlement agreements do not meet the Procurement Code's definition of a 'contract.' However, because of [its] disposition, [this Court did] not address th[e] issue." *Id.*, slip op. at 5 n.11.

The General Assembly did not define labor, time or effort in the Procurement Code. Section 1903(a) of the Statutory Construction Act of 1972 provides that when words in a statute are undefined, they must be accorded "their common and approved usage[.]" 1 Pa.C.S. § 1903(a). "Where a court needs to define an undefined term, it may consult definitions in statutes, regulations or the dictionary for guidance, although such definitions are not controlling." *Adams Outdoor Adver., LP v. Zoning Hearing Bd. of Smithfield Twp.*, 909 A.2d 469,

---

[14] In *Tome*, the parties entered into the settlement agreement on December 28, 2006, well after the General Assembly's 2002 amendments which brought the Board under the Procurement Code, and granted subject matter jurisdiction over Medical Assistance provider reimbursement disputes to BHA. *See* 62 Pa.C.S. § 1724(c).

9

483 (Pa. Cmwlth. 2006). *Merriam-Webster's Collegiate Dictionary* (11th ed. 2004) defines "labor" in this context as "the services performed by workers for wages[.]" *Id.* at 694. "Time" is defined as "the hours or days required to be occupied by one's work[.]" *Id.* at 1309. "Effort" is defined as "something produced by exertion or trying[.]" *Id.* at 397. Because agreeing to waive all potential legal claims and keep communications confidential does not even remotely constitute the "furnishing of labor, time or effort," the Agreements were not for "services" and, thus, are not "contracts" within the meaning of the Procurement Code. 62 Pa.C.S. § 103.

Pennsylvania courts have not decided whether, in 2002, the General Assembly removed from the Board's jurisdiction disputes arising from contracts **other than** agency contracts for purchases of goods and services, like the subject Agreements. In 2012, in *Hanover Insurance Co. v. State Workers' Insurance Fund*, 35 A.3d 849 (Pa. Cmwlth. 2012) (*en banc*), this Court stated:

> [W]e note that interpreting the Procurement Code as severely restricting the Board's jurisdiction to matters involving the Commonwealth's purchase of goods or services arguably deprives all parties who enter into other types of agreements with the Commonwealth . . . . Our courts have long recognized the significance of sovereign immunity in determining that the legislature intended the Board to have broad jurisdiction in claims against the Commonwealth.
>
> Our Supreme Court emphasized the importance of an available forum in *Shovel Transfer:*
>
>> Our finding that jurisdiction of this matter lies with the [Board] is supported by the fact that otherwise there would be no forum available to establish the fact of a valid contract against the Commonwealth. Since at common law sovereign immunity barred a claimant from asserting a claim against the Commonwealth based upon a contract, 1 Pa.C.S. § 2310, no other forum would be available to test the validity of an alleged contract if it did not fit within the exception of the statute provided to exempt the

10

immunity. Thus, any time the Commonwealth challenged the existence of the underlying contract, the claimant would have no forum to establish its legitimacy. The statute creating the [Board] would thus be construed as allowing a claimant to sue only if the Commonwealth conceded the existence of a valid contract in the first instance. We find no basis for such a limited construction.

[*Shovel Transfer,*] . . . 565 A.2d at 1155–56.

*Hanover*, 35 A.3d at 855-56 (citations and footnote omitted).[15] Thus, rather than specifically deciding whether the Board's jurisdiction extends beyond goods and services procurement contract disputes, this Court held that the Board has jurisdiction over "other types of agreements" because claims arising from them would otherwise be barred by sovereign immunity. *Id.* at 855.

In 2013, in *Scientific Games*, the Pennsylvania Supreme Court observed: "[T]he [Board] centers a substantial portion of its presentation on the question of whether the amendments to the Procurement Code reconstituting the tribunal narrowed its jurisdiction only to claims for breaches of *procurement* contracts." *Id.* at 752. However, because the dispute in that case was based upon a procurement contract, the Supreme Court declined the Board's invitation "to broadly settle the jurisdictional landscape[]" at that time. *Id.* at 753 n.16. The *Scientific Games* Court nevertheless recognized:

While more general clarification of the relationship between sovereign immunity and jurisdiction may be appropriate in the arena at large, for present purposes, we regard sovereign immunity as a jurisdictional concern vis-à-vis the Procurement Code. Our understanding, in this regard, is premised on the enactment's self-contained reaffirmation of sovereign immunity, *see* 62 Pa.C.S. § 1702(a), and its

---

[15] In *Hanover*, this Court held that "in light of well-settled precedent **and the lack of clear legislative intent**," the Board had jurisdiction over a dispute arising from an endorsement in the workers' compensation and employer's liability policy issued by the State Workers' Insurance Fund. *Id.* at 856 (emphasis added).

11

explicit, limited waiver of such immunity (among other specified and limited waivers) in connection with a coordinate allocation of 'exclusive jurisdiction' to the [Board] over claims arising from certain contracts entered into by a Commonwealth agency, *see id.* §§ 1702(b), 1724(a)(1). In this respect, we agree . . . that—as a matter of jurisdiction—if the General Assembly has not specifically provided by statute for such [] relief in a claim arising from a contract entered into by a Commonwealth agency under the Procurement Code, then either the claim is within the exclusive jurisdiction of the [Board] or it is barred by sovereign immunity. . . .

Based on the above, we conclude that . . . claims against the Commonwealth are cognizable only to the extent they fall within some 'specific[]' waiver or exception to immunity. 1 Pa.C.S. § 2310.

*Id.* at 756-57.

Notwithstanding that Pennsylvania courts have declined to decide whether the General Assembly removed from the Board's jurisdiction disputes arising from contracts other than agency contracts for purchases of goods and services, the law is clear that the Commonwealth is immune from suit except as specifically waived by the General Assembly, and the General Assembly has waived sovereign immunity for claims over which the Board has exclusive control. By extension, claims over which the Board does not have exclusive control are barred by sovereign immunity. In this case, because the subject Agreements are not written agreements for services, they are not contracts under the Procurement Code and, thus, claims arising therefrom do not fall under the Board's exclusive jurisdiction. Accordingly, we hold that the Commission is immune from Roe's breach of contract and promissory estoppel claims.

Without the General Assembly's express abrogation of sovereign immunity, Roe is without recourse. Although we are sympathetic to Roe's situation, this Court is not authorized to create or expand the Board's jurisdiction, and is bound

12

to adhere to the General Assembly's mandates. In *Armenti*, this Court most recently stated:

> [T]his Court is not at liberty to grant [the petitioner] the relief he requests because the Commonwealth has not waived sovereign immunity for suits based on [his specific type of claim].
>
> . . . .
>
> Our appellate courts have consistently recognized that the Commonwealth is protected from civil suit by sovereign immunity except where the General Assembly has specifically waived that immunity. The limited exceptions to sovereign immunity must be narrowly and strictly construed because the General Assembly intended to exempt the Commonwealth from immunity only in specific situations.
>
> 1 Pa.C.S. § 2310 clarifies that the General Assembly has waived sovereign immunity 'only in such manner and in such courts and in such cases' as set forth in Titles 42 and 62 of the Pennsylvania Consolidated Statutes. The limited waivers of sovereign immunity in Title 42 relate solely to liability for negligence. Under Title 62, the General Assembly has waived sovereign immunity for *certain contract claims* against the Commonwealth and its agencies, but that waiver applies only to claims 'brought in accordance with' Sections 1711.1 (relating to protests of solicitations or awards) and 1712.1 (relating to contract controversies) and Subchapter C (relating to [the Board]) and even then 'only to the extent set forth in this chapter.' 62 Pa.C.S. § 1702.
>
> As our Supreme Court explained in *Scientific Games . . .* , the Procurement Code is 'designedly structured to accord immunity, subject only to specific and limited exceptions.' *Id.* at 753. '[T]he exception to sovereign immunity pertaining to [Board] jurisdiction *defines the extent of the Commonwealth's statutory exception from sovereign immunity for claims arising from contract.*' *Id.* at 755 (emphasis added).

. . . . In the absence of legislative action, this Court is not at liberty to craft [the petitioner] a waiver of sovereign immunity.

The [Board] did not err when it dismissed [the petitioner's] Claim. . . . This Court is not authorized to create an exception for jurisdiction because only the General Assembly can create exceptions to the Commonwealth's sovereign immunity.

*Armenti*, 100 A.3d at 777.

The Pennsylvania Supreme Court has also made clear:

As we noted in *Commonwealth . . . v. Cartwright, . . .* 40 A.2d 30 ([Pa.] 1944),

[t]he intention and meaning of the Legislature must primarily be determined from the language of the statute itself, and not from conjectures aliunde. When the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning. This principle is to be adhered to notwithstanding the fact that the court may be convinced by extraneous circumstances that the legislature intended to enact something very different from that which it did enact.

*Id.* at 33 (citation omitted). We need not inquire into the General Assembly's purpose in limiting jurisdiction . . . . The language of the Judicial Code requires no rationalizing. Rather, where the language of a statute is clear and unambiguous, a court may not add matters the legislature saw fit not to include under the guise of construction. . . . **Any legislative oversight is for the General Assembly to fill, not the courts**. . . .

. . . . [T]his is not the type of omission that can be remedied by judicial insertion of omitted words or phrases in a statute. **Since the omission at issue directly implicates the grant of jurisdiction, it is one of constitutional import.** *See* Pa. Const. [a]rt. V, § 9 (providing for a constitutional right of appeal from all administrative or

judicial determinations, and directing that 'the selection of such court to be as provided by law'). **If indeed there has been an oversight, the correction must come from the General Assembly in the form of an amendment to [the relevant statute].**

*Mohamed v. Dep't of Transp., Bureau of Motor Vehicles*, 40 A.3d 1186, 1194-95 (Pa. 2012) (emphasis added).

Until such time as the General Assembly clarifies that the Board's jurisdiction applies to disputes arising from contracts other than those for the procurement of goods and services, or specifically to settlement agreements, the Board does not have exclusive jurisdiction over Roe's claim simply because his claim may otherwise be barred by sovereign immunity. Accordingly, we sustain the Commission's preliminary objections and dismiss Roe's Amended Complaint without prejudice.

_____
ANNE E. COVEY, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Carl Roe,                                  :
                        Petitioner         :
                                           :
            v.                             :
                                           :
The Pennsylvania Game Commission,          :     No. 409 M.D. 2014
                        Respondent         :

## O R D E R

AND NOW, this 22nd day of September, 2016, The Pennsylvania Game Commission's preliminary objections are sustained, and Carl Roe's Amended Complaint is dismissed without prejudice.

_____
ANNE E. COVEY, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Carl Roe,                                       :
               Petitioner          :
                         :
         v.                                :    No. 409 M.D. 2014
                         :    Argued:  December 9, 2015
The Pennsylvania Game Commission,               :
               Respondent          :


BEFORE:   HONORABLE DAN PELLEGRINI, President Judge
             HONORABLE RENÉE COHN JUBELIRER, Judge
             HONORABLE ROBERT SIMPSON, Judge
             HONORABLE MARY HANNAH LEAVITT, Judge
             HONORABLE P. KEVIN BROBSON, Judge
             HONORABLE PATRICIA A. McCULLOUGH, Judge
             HONORABLE ANNE E. COVEY, Judge


DISSENTING OPINION
BY JUDGE BROBSON               FILED:  September 22, 2016

The legal issue, plainly stated, is whether, after it has received the benefit of the bargain, the Commonwealth may breach a settlement agreement with impunity.  The answer is, and must be, no.

"This case must be resolved in light of our longstanding public policy which encourages settlements."  *Muhammad v. Strassburger, McKenna, Messer, Shilobod & Gutnick*, 587 A.2d 1346, 1348 (Pa. 1991).  In a 1989 decision, the Pennsylvania Supreme Court acknowledged that under the since-repealed Board of Claims Act,[1] the Board of Claims had jurisdiction over contract actions seeking to

---

[1] Act of May 20, 1937, P.L. 728, *as amended, formerly* 72 P.S. §§ 4651-1 to 4651-10.

*enforce* (but not abrogate or void) settlement agreements with the Commonwealth. *Keenheel v. Cmwlth., Pa. Sec. Comm'n*, 565 A.2d 1147 (Pa. 1989) (citation omitted) (footnote omitted).    Therein, the Supreme Court recognized the importance of providing a remedy and forum to those that enter into agreements with the Commonwealth:

> The significance of the Board of Claims is that it provides a forum in which companies which do business with   the Commonwealth and   its   various agencies can present contractual disputes and seek remedies for the Commonwealth's alleged breaches.    Such actions would be impossible were it not for the Board of Claims whose enabling statute expressly abrogates the sovereign immunity that otherwise shields the Commonwealth from suits of such nature.  The result, absent this exception to sovereign immunity, would be that parties with contractual complaints against the Commonwealth would be without recourse.    Such a circumstance would dissuade others from providing contractual services to the Commonwealth.

*Keenheel*, 565 A.2d at 1149 (citation omitted) (footnote omitted).

As the majority notes, the General Assembly repealed the Board of Claims Act in 2002 and re-enacted the Board of Claims' enabling legislation under the Procurement Code.[2]   In my assessment, the Board of Claims' jurisdiction to hear disputes over the enforcement of settlement agreements, recognized by the Supreme Court in *Keenheel*, remains extant under the Procurement Code.  Like the Board of Claims Act, the Procurement Code includes a waiver of sovereign immunity for claims over which the Board of Claims has exclusive jurisdiction.

---

[2] 62 Pa. C.S. §§ 101-2311; *see* Sections 2, 9, 10, 12, and 12.2 of the Act of December 3, 2002, P.L. 1147 (amending relevant provisions of the Procurement Code); Section 21(a) of the Act of December 3, 2002, P.L. 1147 (repealing Board of Claims Act).

62 Pa. C.S. § 1702. Relevant to this matter is the Board of Claims' exclusive jurisdiction over claims arising from "[a] *contract* entered into by a Commonwealth agency . . . and filed with the [B]oard in accordance with section 1712.1 (relating to contract controversies)." 62 Pa. C.S. § 1724(a)(1) (emphasis added). The Procurement Code defines "contract" as a written agreement for the procurement or disposal of "supplies, *services*, or construction." *Id.* § 103 (emphasis added). "Services" is defined as "[t]he furnishing of labor, time or effort by a contractor not involving the delivery of a specific end product other than drawings, specifications or reports which are merely incidental to the required performance." *Id.*

Unlike the majority, I would conclude that the settlement agreement (both the original and amended and restated) entered into between the Pennsylvania Game Commission (Commission) and Carl Roe (Roe) was a contract for *services*. Under the agreement, the Commission agreed to pay Roe $200,000.00 *if* Roe would tender his resignation 16 months earlier than he intended, waive all potential legal claims against the Commission, and maintain certain communications confidential. The majority concludes that Roe's part of the bargain "does not even remotely constitute the 'furnishing of . . . effort.'" (Maj. Op. at 9.) I respectfully disagree. Honoring his end of the bargain, Roe retired in January 2014. Retirement from Commonwealth service does not just happen. There is a process, which Roe agreed to initiate and conclude as part of the settlement agreement. It is not an effort*less* exercise. Roe, too, agreed to waive and release any and all claims he might have against the Commission. "A waiver in law is the act of *intentionally* relinquishing or abandoning some known right, claim or privilege." *Brown v. City of Pittsburgh*, 186 A.2d 399, 401

(Pa. 1962) (emphasis in original).  An intentional act, by definition, requires effort.  Finally, Roe agreed to maintain confidentiality, which, I submit, requires ongoing effort.

In short, the settlement agreement between the Commission and Roe is a contract for "services," as defined under the Procurement Code.  Roe's breach of contract claim, in which he seeks to enforce the terms of the contract, falls within the exclusive jurisdiction of the Board of Claims, and sovereign immunity is, therefore, waived with respect to that claim.  *Keenheel*.  I would overrule the Commission's preliminary objection raising sovereign immunity, sustain the Commission's alternative preliminary objection asserting the exclusive jurisdiction of the Board of Claims over Roe's complaint, and transfer the matter to the Board of Claims for further proceedings.


_____
P. KEVIN BROBSON, Judge


Judge Leavitt joins in this dissent.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Carl Roe,                   :

         Petitioner        :

                   :   No. 409 M.D. 2014

        v.           :

                   :   Argued:  December 9, 2015

The Pennsylvania Game Commission,  :

        Respondent      :

BEFORE:    HONORABLE DAN PELLEGRINI, President Judge
                HONORABLE RENÉE COHN JUBELIRER, Judge
                HONORABLE ROBERT SIMPSON, Judge
                HONORABLE MARY HANNAH LEAVITT, Judge
                HONORABLE P. KEVIN BROBSON, Judge
                HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE ANNE E. COVEY, Judge

**DISSENTING OPINION BY**
**JUDGE McCULLOUGH**                 **FILED:  September 22, 2016**

I must respectfully dissent from the Majority's decision to sustain the Pennsylvania Game Commission's (Commission) sovereign immunity based preliminary objections, and thereby dismissing Carl Roe's (Petitioner's) complaint alleging breach of contract and/or promissory estoppel relative to the "Agreement and Release" and "Amended Agreement and Release" that promised, *inter alia,* a $220,000.00 payment for his "earlier-than-intended" retirement, as well as a purported release of claims and other consideration.  I believe the issue of whether the Commission can agree to pay an "at-will" employee consideration to retire "earlier than he intended," even after his resignation, should not be disposed of by preliminary objections.

The record demonstrates that the waters in which this case has traversed are murky and that, at the very least, this matter should not be disposed of on preliminary objections as to sovereign immunity. As noted in the Amended Complaint, both the Commission's General Counsel and the Office of Attorney General (OAG) approved the original Agreement and Release as to both form and legality. General Counsel to the Commission also approved the Amended Agreement and Release and, as averred in the Amended Complaint, OAG is deemed to have approved that document as well by its purported inaction.[1] Conversely, however, I do agree with the Commission that this case should be heard by the Board of Claims and therefore would sustain the Commission's preliminary objections as to this Court's jurisdiction.

For the following reasons, I believe that the correct course to be charted as to sovereign immunity is to overrule the preliminary objections, without prejudice to the Commission to raise them as New Matter, and transfer this case to the Board of Claims.

First, Pennsylvania Rule of Civil Procedure (Pa.R.C.P.) No. 1030(a) provides that all affirmative defenses, including immunity from suit, are to be raised as New Matter. While cast as preliminary objections, the Commission is clearly raising the affirmative defense of sovereign immunity. Pa.R.C.P. No. 1030(a) requires this to be raised as New Matter so that a factual determination of the issues may be made. That is especially important in this case, given the approval of the initial agreement by, not only counsel to the Commission but also

---

[1] The Majority Opinion repeatedly refers to the Agreement and Release and the Amended Agreement and Release as "settlement agreements." The Amended Complaint contains no reference to such a categorization of these documents.

PAM - 2 -

the OAG, and the approval of the Amended Agreement, again by the Commission's General Counsel and the alleged "deemed approval" thereof by the OAG. There appears to be factual issues that need to be resolved and the preliminary objections cannot be disposed of based upon the face of the complaint.

Further, assuming arguendo that sovereign immunity would apply to this case, the aforesaid approvals by the Commission's Counsel and the approval and "deemed approval" by the OAG's office, as well as the unanimous endorsement of both agreements by the Commission's board members, if proven, may well support a contention that such immunity has been waived. Accordingly, even if it is permissible for the Commission to raise sovereign immunity via preliminary objections, there is an important factual issue, i.e., waiver of immunity, that must be resolved. Hence, the Commission's preliminary objections raising sovereign immunity must be dismissed for this reason as well.[2]

---

[2] While this matter is before us as to preliminary objections to Petitioner's Amended Complaint, the Majority also references the Original Complaint, stating that "Roe's original complaint asserted a single breach of contract claim against the Commission." (Slip op. at 3.) While not specifically incorporated into the Amended Complaint, we note that two exhibits, identified as Exhibits C and E, were incorporated into the Original Complaint filed with this Court.

Exhibit C is a January 30, 2014 letter from the Office of General Counsel (OGC), through its First Executive Deputy General Counsel, noting concern that the agreement was a severance agreement in violation of section 215 of the Administrative Code of 1929, Act of April 9, 1929, P.L. 177, *as amended*, 71 P.S. §75. The pertinent sections of the OGC's letter are as follows:

> The office of General Counsel ("OGC") has concerns that, notwithstanding the form of the Agreement, it is in reality a severance agreement that violates section 215 of The Administrative Code of 1929, 71 P.S. §75 ("No employe in any administrative department, independent administrative board or commission, or departmental administrative board or commission, employed at a fixed compensation, shall be paid for any extra

**(Footnote continued on next page…)**

**(continued…)**

services, unless expressly authorized by the Executive Board prior to the rendering of such services.").

Because the Agreement appeared to OGC on its face to constitute a severance agreement in violation of section 215 of the Administrative Code, [Office of Comptroller Operations (OCO)] (through its OGC-designated counsel) asked [the Commission's] chief counsel for clarification.

In response, [the Commission] informed OCO that the Agreement was intended in part to settle potential claims that Roe might make against [the Commission]. OCO responded that the written Agreement did not appear on its face to reflect a purpose to settle threatened or potential claims and, therefore, could not be processed for transmittal to Treasury in the form presented. . . .

\* \* \*

Notwithstanding the revisions to the Agreement made by [the Commission] and Roe, OGC remains concerned that the Agreement is *in reality* an improper severance agreement that violates section 215 of the Administrative Code. We are skeptical that Roe, a strictly at-will employee of [the Commission], has any claims that he could credibly or legitimately make against [the Commission]. Rather, OGC is convinced that [the Commission] has agreed to pay Roe $220,000 as compensation to induce him to retire months earlier than he had intended, and to agree to terms of confidentiality respecting his tenure with [the Commission] and the circumstances of his severance. Neither reason would distinguish the Agreement from that which is barred by section 215.

\* \* \*

As a final point, we would note that the source of the funds for [the Commission] to make payment under the Agreement would be the Game Fund. Thus, the payment of a $220,000 severance to Roe would come at the expense of other important [the Commission] activities that are conducted under the Game and Wildlife Code [34 Pa.C.S. §§101-2965] for the benefit of all Pennsylvanians. Sportsman, conservationists and countless Pennsylvanians depend

**(Footnote continued on next page…)**

Second, this matter should be transferred to the Board of Claims for disposition, including the issue of sovereign immunity and waiver thereof (if raised via New Matter), and all other issues attendant to this case. The General Assembly, through its 2002 amendment to the Commonwealth Procurement Code,[3] has reiterated the general investiture of monetary claims against the Commonwealth and its agencies, such as the Commission, with the Board of Claims.

---

**(continued…)**

> on responsible public officials to assure that all-Game Fund dollars
> are spent only for legally proper purposes.

(Original Complaint, Exhibit C at 1-3.)

Exhibit E is a March 18, 2014 letter signed by Governor Corbett and a school of high ranking legislators to the President of the Commission, three months after Petitioner resigned from his post as Executive Director (a position he held for over eight years), noting that the agreement could be viewed as a severance agreement, that it was in conflict with state law, requesting that the agreement be immediately revoked, and demanding the immediate resignation of any member of the Board of Commissioners who refuses to do so. The pertinent part of that letter reads as follows:

> We were each shocked and extremely disappointed to learn that the Board of Commissioners had approved what amounts to a $220,000 severance payment for your former Executive Director. This payment was never voted on or announced publicly; appears to have no basis of justification; and also appears to be in conflict with state law. In our view, such a payment is a gross abuse of the Commission's fiduciary responsibility.

(Original Complaint, Exhibit E at 1.)

[3] 62 Pa.C.S. §§101-2311.

It is therefore the province of the Board of Claims, in the first instance, to resolve any issues related to sovereign immunity or other issues that may bear on its capacity to entertain and/or dispose of this case. This position is in keeping with long line of settled precedent whereby the appellate courts of this Commonwealth treat adjudicative agencies with deference.

This matter is undoubtedly premised upon two agreements between Petitioner and the Commission, and our Supreme Court has made clear that "the exception to sovereign immunity pertaining to Board-of-Claims jurisdiction defines the extent of the Commonwealth's statutory exception from sovereign immunity for claims arising from contract." *Scientific Games International, Inc. v. Commonwealth*, 66 A.3d 740, 755 (Pa. 2005); *see also Employers Insurance of Wausau v. Department of Transportation*, 865 A.2d 825, 831-34 (Pa. 2005); *Armenti v. Pennsylvania State System of Higher Education*, 100 A.3d 772, 777 (Pa. Cmwlth. 2014); *Telwell, Inc. v. Public School Employees' Retirement System*, 88 A.3d 1070, 1089 n.17 (Pa. Cmwlth. 2014); *Dubaskas v. Department of Corrections*, 81 A.3d 167, 175 (Pa. Cmwlth. 2013).

Thus, even where sovereign immunity has been waived for claims related to contracts with Commonwealth agencies, that waiver is confined to claims made directly to the Board of Claims. *Scientific Games*, 66 A.3d at 756. Furthermore, while under section 761 of the Judicial Code[4] this Court has original jurisdiction over civil matters against the Commonwealth, and the relevant statutory exception applies only to claims brought pursuant to the now-repealed

---

[4] 42 Pa.C.S. §761.

Board of Claims Act,[5] section 761 of the Judicial Code does not repeal, modify, or supplant the Board of Claims' exclusive jurisdiction over contract claims, nor does it constitute an independent waiver of sovereign immunity that would allow us to hear Petitioner's claims in the first instance. *Scientific Games*, 66 A.3d at 756 & n.10; *Telwell*, 88 A.3d at 1089 n.17.

The Commission also requested that we dismiss the Amended Complaint because it was improperly filed in this Court. However, Pa.R.C.P. No. 213(f) provides:

> When an action is commenced in a court which has no jurisdiction over the subject matter of the action it shall not be dismissed if there is another court of appropriate jurisdiction within the Commonwealth in which the action could originally have been brought but the court shall transfer the action at the cost of the plaintiff to the court of appropriate jurisdiction. It shall be the duty of the prothonotary or clerk of the court in which the action is commenced to transfer the record together with a certified copy of the docket entries to the prothonotary or clerk of the court to which the action is transferred.

Pa.R.C.P. No. 213(f). The Board of Claims is considered a judicial tribunal under Pa.R.C.P. No. 213 and, therefore, transfer to the Board is warranted as the "court of appropriate jurisdiction." *Employers Insurance of Wausau*, 865 A.2d at 830 n.6; *Telwell*, 88 A.3d at 1089-90; *see also Hanover Insurance Company v. State Workers' Insurance Fund of the Commonwealth*, 35 A.3d 849, 856 n.8 (Pa. Cmwlth. 2012).

Accordingly, I would overrule the Commission's preliminary objections regarding sovereign immunity, sustain the Commission's preliminary

---

[5] Act of May 20, 1937, P.L. 728, *as amended*, 72 P.S. §§4651-1 – 4651-10, *repealed by* the Act of December 3, 2002, P.L. 1147, effective July 1, 2003.

objections regarding jurisdiction, and transfer this matter to the Board of Claims to dispose of the matter in accordance with this opinion.[6]

_____
PATRICIA A. MCCULLOUGH, Judge

Judge Leavitt joins in this dissent.

---

[5] In addition to the Commission's third and fourth preliminary objection, which I have not addressed in this opinion, the Board of Claims is also the proper venue for the resolution of the Commission's argument that the Board is without jurisdiction over Petitioner's contract claims because he did not comply with the pre-litigation administrative remedies procedure outlined in section 1712.1 of the Commonwealth Procurement Code, including the requirements that he file a claim with the contracting officer within six months of the breach, wait for a written response from the contracting officer, and then file a claim with the Board within 15 days. *See* 62 Pa.C.S. §1712.1. The question of whether Petitioner has complied with section 1712.1 is not apparent from the face of the Amended Complaint; Petitioner alleges only that the Commission breached the Amended Agreement on March 18, 2014 by refusing to pay the agreed upon consideration of $220,000. (Amended Complaint ¶34.) Resolution of this objection therefore requires the development of an evidentiary record before the Board of Claims following transfer. *See* Pa.R.C.P. No. 1028(c)(2) ("If an issue of fact is raised [in a preliminary objection], the court shall consider evidence by depositions or otherwise."); *Ferguson Electric Co., Inc. v. Department of General Services*, 3 A.3d 681, 688 (Pa. Cmwlth. 2010) (concluding that the Board of Claims may resolve a preliminary objection raising the issue of whether the contracting party complied with the section 1712.1 procedure following evidentiary hearings).