IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re:  The Upset Sale of Properties          :
against which delinquent 2014 Taxes            :
were returned to the Tax Claim Unit,           :
Fiscal Operations on or about the last         :
day of April, 2015                             :
                                               :
Joseph Avate and Lisa Avate                    :
                                               :    No. 146 C.D. 2018
Appeal of:  Heywood Becker                     :    Argued:  December 13, 2018


BEFORE:    HONORABLE P. KEVIN BROBSON, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON                         FILED:  January 8, 2019


Heywood Becker (Becker) appeals from the January 26, 2018 order of the Court of Common Pleas of Northampton County (trial court) granting the request of Joseph Avate and Lisa Avate (together, Avates) to strike the praecipe filed by Becker marking the case settled and reinstate the Avates' objections and exceptions to the upset tax sale of their real property located at 530 Main Street, Northampton, Pennsylvania under the Real Estate Tax Sale Law (RETSL).[1]  The trial court further dismissed the Avates' objections and exceptions as moot and ordered Becker to accept payment pursuant to a stipulation to resolve this matter in its entirety.  Upon review, we reverse and remand.

---

[1] Act of July 7, 1947, P.L. 1368, *as amended*, 72 P.S. §§ 5860.101-5860.803.

On September 27, 2016, Becker purchased the Avates' property as a successful bidder at an upset tax sale for $15,148.04, the proceeds of which were to cover the Avates' delinquent 2014 borough and county real estate taxes. Reproduced Record (R.R.) at 4a-5a. On October 17, 2016, the trial court entered a confirmation nisi[2] relative to Becker's purchase of the property, to which the Avates objected,[3] asserting that they did not receive notice from the borough, the county, the tax claim bureau or the county fiscal affairs office that their real estate taxes had not been paid. R.R. 4a-6a. Becker intervened in the proceedings and filed an answer to the Avates' objections, R.R. 8a, and the Northampton Tax Claim Unit (tax claim unit) answered the objections on or about December 5, 2016. On or about July 25, 2017, the tax claim unit, Becker and the Avates entered into a "Stipulation to Cancel the September 27, 2016 Upset Tax Sale of Tax Map Parcel No. M4NW3C-1-1" (stipulation), R.R. 10a-15a, to resolve this matter amicably.[4]

---

[2] Section 607(c) of the RETSL provides: "[i]n case no objections or exceptions are filed to any such sale within thirty (30) days after the court has made a confirmation nisi, a decree of absolute confirmation shall be entered as of course by the prothonotary." 72 P.S. § 5860.607(c).

[3] Section 607(d) provides that when objections or exceptions to a sale are filed, such objections or exceptions:

> may question the regularity or legality of the proceedings of the bureau in respect to such sale, but may not raise the legality of the taxes on which the sale was held, of the return by the tax collector to the bureau or of the claim entered. In case any objections or exceptions are filed they shall be disposed of according to the practice of the court. If the same are overruled or set aside, a decree of absolute confirmation shall be entered by the court.

72 P.S. § 5860.607(d).

[4] The tax claim unit is not participating before this Court.

2

Pursuant to the stipulation, the tax claim unit, Becker and Avates agreed to the cancellation and setting aside of the upset tax sale if the "contingencies" were met within the "timeframe agreed upon." Stipulation ¶ 3; R.R. 10a. Specifically, the stipulation provides, in pertinent part:

> 4. The Avates shall pay to the Northampton County Tax Claim Unit all taxes and costs due and owing on the subject property. *The Avates have until August 31, 2017 (hereinafter, "timeframe")*, to pay to the Northampton County Tax Claim Unit all taxes and costs due and owing on the subject property.
>
> 5. The Avates shall pay to Becker $60,000. *The Avates have until August 31, 2017* (hereinafter, "timeframe"), to pay to Becker $60,000.00.
>
> 6. After both Becker and the Northampton County Tax Claim Unit are paid as designated above, the parties agree to present the attached Order for signature by the court in as expeditious a manner as possible.
>
> 7. Within 30 days of Becker's request for a refund, the Northampton County Tax Claim Unit shall refund to him the full amount that he bid for the said property. (By then, the Tax Claim Unit shall have been paid in full, under ¶ 4 above.) However, in no event shall this request be made prior to payment from the Avates to Becker under ¶ 5 above, and the payment of all outstanding taxes to the Northampton County Tax Claim Unit on the subject property under ¶ 4 above, as well as the Order associated with this agreement being signed by the Court.
>
> 8. *If, within said timeframe*, the Avates HAVE made the required payment of $60,000 to Becker, under ¶ 5 above, AND HAVE paid the Northampton County Tax Claim Unit all taxes and costs due and owing on the subject property, under ¶ 4 above, then the Order that accompanies

3

the instant Stipulation shall be presented to the Court, and, once said Order is signed by the Court, Becker shall have no further interest in the subject property, and any party may file a praecipe to mark the instant case (*i.e.*, the objections filed by the Avates) settled of record with the Prothonotary of Northampton County.

9. *If, within said timeframe, the Avates HAVE NOT made the required payment of $60,000.00 to Becker, or HAVE NOT paid the Northampton County Tax Claim Unit all taxes and costs due and owing on the subject property, then the Order that accompanies the instant Stipulation will NOT be submitted to the court and the Avates shall be deemed to have defaulted on this agreement.* In such an instance, the Tax Claim Unit shall proceed to prepare and record a deed to Heywood Becker in the same manner as they would if the Avates' filed objections had never been filed. In such an instance, any party may file a praecipe to mark the case (i.e., the said objections) settled of record with the Northampton County Prothonotary pursuant to this agreement.

10. *If the Avates have not made the required payment within said timeframe*, the Avates agree to turn possession of the Property over in broom-clean undamaged condition to Becker on or before September 30, 2017. . . .

R.R. 11a-12a (capitalization in original, italics added).

The Avates did not pay the $60,000 by the agreed upon August 31, 2017 deadline. Thereafter, on September 15, 2017, Becker filed a praecipe to mark the case settled. On September 22, 2017, the Avates petitioned the court to strike Becker's praecipe marking the case settled and asked the trial court to reinstate their objections and exceptions to the upset tax sale. R.R. 16a-19a. In the petition, the Avates alleged that they entered into an agreement of sale for the property, on June 28, 2017, prior to executing the stipulation, with Joseph Avate, Jr. and Gina Marie

4

Martin (purchasers). R.R. 18a. The purchasers faced some unexpected difficulties with regard to obtaining a final mortgage commitment to purchase the property and, as a result, settlement had been rescheduled on several occasions. *Id*. The purchasers finally successfully obtained a mortgage commitment and rescheduled settlement to be held on or before October 31, 2017. *Id*. Additionally, on September 22, 2017, the trial court issued a rule upon Becker to show cause why his praecipe to mark the case settled should not be "stricken and rescinded." On October 25, 2017, the Avates filed a motion to compel Becker to accept $60,000 in accordance with the stipulation and to release any and all claims to the property. R.R. 22a-27a. Becker answered the motion, and the trial court held a hearing on the petition to strike the praecipe marking the case settled and on the motion to compel Becker to accept $60,000 in accordance with the stipulation.

After the hearing, the trial court granted the Avates' request for relief and ordered Becker to accept the $60,000 payment to resolve the matter. Trial Court Opinion at 13. Applying equitable principles, the trial court explained that although the stipulation required the Avates to meet the August 31, 2017 deadline, the "course of events and Becker's conduct with respect to the same renders the [deadline] clause waived." *Id*. at 12. The trial court noted that the Avates' failure to pay was not a result of "any fault of their own;" rather, the delay was occasioned by an "apparent cloud on the title." *Id*. Further, the trial court explained:

> It was August 8, 2017 when the parties were made aware that settlement would not occur by August 15, 2017, and it was August 24, 2017 when the Purchasers opened an application with a new mortgage company. The deadline set forth in the Stipulation . . . expired on August 31, 2017, and Becker took no action under the Agreement for over two weeks, when on September 15, 2017, he filed a praecipe to mark the case settled. Further, there is no

5

evidence that Becker made any effort to advise the Avates of his refusal to accept the cash payment due to him under the Stipulation until October 10, 2017, when he sent his counsel to advise the title company of the same, and he gave them no opportunity to cure despite the fact that he had permitted the August 31, 2017 deadline to pass, and there was a looming settlement date.

Upon consideration of Becker's course of conduct, the Court concludes that if we were to find time of the essence in the contract, Becker having allowed the passage of the payment date set forth in the [Stipulation] and his failure to make a timely demand for performance would constitute a wavier [sic] of the same. In light of such waiver, the Court finds that it appropriate [sic] to grant the Avates' request for specific performance.

Trial Court Opinion at 12-13. Becker appealed the trial court's decision to this Court.[5]

On appeal, Becker asserts that the trial court erred as a matter of law when it reviewed this matter in equity, rather than in law, to conclude that the Avates could perform late under the stipulation. Becker's Brief at 14 & 18. Becker argues that the parties negotiated the stipulation to resolve a dispute under the RETSL, an out-of-court settlement. Becker's Brief at 15-17. The stipulation established a fixed date of performance and the Avates did not comply, resulting in Becker exercising his right to file the praecipe to mark the matter settled. Becker's Brief at 19. By refusing to honor the explicit terms of the out-of-court settlement agreement, *i.e.*, the stipulation, the trial court modified the stipulation, treating it instead as an agreement

---

[5] Our review is limited to determining whether the trial court erred as a matter of law, rendered a decision unsupported by the evidence or abused its discretion. *Parkton Enters., Inc. v. Krulac*, 865 A.2d 295, 298 n.5 (Pa. Cmwlth. 2005). This Court reviews the interpretation of contractual provisions as a question of law. *Dep't of Gen. Servs. v. Pittsburgh Bldg. Co.*, 920 A.2d 973, 981 n.11 (Pa. Cmwlth. 2007).

6

of sale when "no legal ground has been raised for modifying the contract." Becker's Brief at 18-20. The Avates counter that they sought to and still seek to enforce the stipulation requiring Becker to accept the $60,000 and that it does not matter whether the Avates were the breaching party or the non-breaching party under the operation of contract principles appropriately applied by the trial court. Avates' Amended Brief at 12.

Initially, we note that this matter pertains to the enforcement of the stipulation, *i.e.*, the settlement agreement, to resolve the underlying statutory proceeding commenced under the RETSL. A settlement agreement is "in essence a contract binding the parties thereto" and settlement agreements are governed by contract law principles. *Roe v. Pa. Game Comm'n*, 147 A.3d 1244, 1250 (Pa. Cmwlth. 2016); *see also Lesko v. Frankford Hosp.-Bucks Cty.*, 15 A.3d 337, 341-42 (Pa. 2011) (stating, "settlement agreements are governed by contract law principles). Therefore, the application of contract law is appropriate to resolve the issues surrounding the stipulation. *See Lesko*, 15 A.3d at 341-42.

A fundamental rule of contract interpretation is to ascertain the intent of the contracting parties and, in the case of written contracts, the intent of the parties is the writing itself. *Id.* at 342. In determining the intent of the contracting parties, all provisions in the agreement will be construed together and each will be given effect. *Id.* This Court will not interpret a provision of a contract in a manner which results in another being annulled. *Id.* Moreover:

> [W]hen a written contract is clear and unequivocal, its meaning must be determined by its contents alone. It speaks for itself and a meaning cannot be given to it other than that expressed. Where the intention of the parties is clear, there is no need to resort to extrinsic aids or evidence. Hence, where language is clear and

7

> unambiguous, the focus of the interpretation is upon the terms of the agreement as *manifestly expressed*, rather than as, perhaps, silently intended.

*Steuart v. McChesney,* 444 A.2d 659, 661 (Pa. 1982) (emphasis in original).  Becker asserts that he followed the plain terms of the stipulation by filing the praecipe to mark the case settled when the Avates did not provide payment on time and, therefore, the trial court erred by granting the Avates the requested relief.  We agree.

The stipulation provided that the Avates had to make two payments by August 31, 2017: (1) all "taxes and costs due and owing" to the tax claim unit on the property; and (2) a payment to Becker of $60,000.  Stipulation ¶¶ 4-5; R.R. 11a.  Once the Avates made their payments to the tax claim unit and Becker, the parties would present the stipulation to the court for signature and filing as an order in as "expeditious a manner as possible."  Stipulation ¶¶ 6 & 14; R.R. 11a & 13a.  But, the Avates did not make payment to Becker within the time frame that they agreed to under the terms.  In that case, the stipulation expressly provided that:

> [i]f, *within said timeframe, the Avates HAVE NOT made the required payment of $60,000.00 to Becker*, *or* HAVE NOT paid the [tax claim unit] all taxes and costs due and owing on the subject property, then the Order that accompanies the instant Stipulation will NOT be submitted to the court and the Avates *shall* be deemed to have defaulted on this agreement.  In such an instance, the [t]ax [c]laim [u]nit shall proceed to prepare and record a deed to Heywood Becker in the same manner as they would if the Avates' filed objections had never been filed.  In such an instance, *any party may file a praecipe to mark the case (i.e., the said objections) settled of record with the Northampton County Prothonotary pursuant to this agreement*.

Stipulation ¶ 9 (emphasis added); R.R. 11a-12a. Because the Avates did not make the required payment "within said timeframe," they "shall be deemed to have defaulted on the agreement." *Id*. Once the Avates failed to meet the deadline, Becker exercised his right to file a praecipe to mark the case settled.

Despite Becker exercising his rights under the plain language of the stipulation, the trial court nevertheless concluded that the Avates' failure to make the payment on time was not a result of "any fault of their own," but that the delay was occasioned by an "apparent cloud on the title." Trial Court Opinion at 12. To reach this conclusion, the trial court considered evidence that the Avates had entered into a separate sales agreement, dated June 28, 2017, to sell the property to purchasers and that the Avates planned to use the proceeds of the property sale to the third-party purchasers to comply with the terms of the stipulation. *Id*. As is common in the sale of real estate, unexpected problems came up, resulting in settlement on the property getting pushed back to October 2017, which was beyond the August 31, 2017 payment deadline. *Id*.

The June 28, 2017 sales agreement is not, however, in any way mentioned in the four corners of the stipulation. As a result, the trial court erred when it considered facts pertaining to the Avates' separate June 28, 2017 sales agreement in its interpretation of the stipulation. By requesting permission to obtain additional time to perform under the contract, the Avates were, in actuality, asking the trial court to modify the terms of the stipulation. *See Steuart*, 444 A.2d at 662 (noting that the parties have the right to make their own contract and it is not the function of the court to re-write it or to give it a construction in conflict with the accepted and plain meaning of the language used). The stipulation, by its terms, unambiguously required the Avates to submit payment to Becker by August 31,

9

2017. *See Steuart*, 444 A.2d at 661 ("[w]here the intention of the parties is clear, there is no need to resort to extrinsic . . . evidence"). We further note that the trial court also erred by concluding that Becker waived his right under the contract by waiting until September 15, 2017 to file the praecipe to mark the case settled because the stipulation provided no deadline for that filing. By the terms of the stipulation, the Avates had to turn possession of the property over to Becker "on or before September 30, 2017," Stipulation ¶ 10; R.R. 12a, and Becker filed the praecipe to mark the case settled well before that date. Because the trial court failed to abide by the plain language of the stipulation, it erred as a matter of law.

Accordingly, we reverse the trial court's January 26, 2018 order and remand to the trial court to immediately order reinstatement of Becker's praecipe to mark the case settled and to enter an order consistent with the terms of the stipulation and this opinion.

_____
CHRISTINE FIZZANO CANNON, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re:  The Upset Sale of Properties    :
against which delinquent 2014 Taxes  :
were returned to the Tax Claim Unit,  :
Fiscal Operations on or about the last  :
day of April, 2015                     :
                                        :

Joseph Avate and Lisa Avate      :
                                        :   No. 146 C.D. 2018

Appeal of:  Heywood Becker     :

## O R D E R

AND NOW, this 8th day of January, 2019, the January 26, 2018 order of the Court of Common Pleas of Northampton County (trial court) is REVERSED, and this matter is REMANDED to the trial court to immediately order reinstatement of Heywood Becker's praecipe to mark the case settled and to enter an order consistent with the terms of the "Stipulation to Cancel the September 27, 2016 Upset Tax Sale of Tax Map Parcel No. M4NW3C-1-1" and the foregoing opinion.

Jurisdiction relinquished.

_____
CHRISTINE FIZZANO CANNON, Judge