IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael and Abadella Gant,       :
Husband and wife,           :
         Petitioners      :
                           :
       v.               :
                           :
Department of Human Services,  :   No. 324 M.D. 2021
         Respondent     :   Submitted: April 28, 2023


BEFORE:   HONORABLE ANNE E. COVEY, Judge
              HONORABLE MICHAEL H. WOJCIK, Judge
              HONORABLE STACY WALLACE, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                       FILED: December 6, 2023


Before this Court are the Department of Human Services' (Department) Preliminary Objections to Michael and Abadella Gant, husband and wife's (collectively, the Gants), First Amended Petition for Review (Complaint) (Preliminary Objections). After review, this Court sustains the Department's first Preliminary Objection and dismisses the Complaint.


**Background**[1]

The Gants' adult daughter Mikeisha Gant (Daughter) suffered from advanced sickle cell anemia, and was bedridden and in need of 24-hour care. *See* Complaint ¶ 9. Daughter qualified for, and was enrolled in, the Department's

---

[1] The facts are as alleged in the Complaint.

Attendant Care Waiver Program's (ACWP) Consumer-Directed Model in 2011.[2] *See id.* ¶ 46. Thereunder, Daughter could hire workers to supply personal assistance services for her at home. *See id.* ¶¶ 12-21, 47; *see also id.* Ex. A (Department's Office of Long-Term Living, Act 150[3] Program Guidelines, issued May, 2016 (Act 150 Guidelines)). Daughter had chosen the Gants to provide her personal assistance services in exchange for which the Department paid them wages.[4] *See id.* ¶¶ 19, 22, 48. The Gants claim that, under the Act 150 Guidelines, Daughter was their common law employer. *See id.* ¶ 17.

---

[2] The federal Medicaid program authorizes states "to offer, under a waiver of statutory requirements, an array of home and community-based services that an individual needs to avoid institutionalization." 42 C.F.R. § 441.300; *see also* 42 U.S.C. § 1396n(c). Essentially, the federal government "waives" certain regulations for community-based programs under which intermediate care facilities are required to operate. The Commonwealth's Medical Assistance program is authorized by Article IV of the [Human Services] Code, Act of June 13, 1967, P.L. 31, *as amended*, 62 P.S. §§ 401-[]93, and must be administered as required by Title XIX of the Social Security Act, 42 U.S.C. § 1396-1396(w-5), and any associated regulations. *See* 55 Pa. Code § 1101.11(b).

*Dep't of Pub. Welfare v. Gant*, 142 A.3d 964, 969 n.5 (Pa. Cmwlth. 2016) (*Gant I*).

[The Department's ACWP] . . . permits Medical Assistance recipients to receive nursing home-type care and services in their homes. . . . Under the Consumer-Directed Model, a [Department] service coordinator [] assists the recipient in developing an individual support plan under which the recipient employs care workers which, oftentimes, are family members.

*Id.* at 968-69 (footnotes omitted).

[3] Attendant Care Services Act, Act of December 10, 1986, P.L. 1477, No. 150 (Act 150), 62 P.S. §§ 3051-3058.

[4] The Department paid Abadella Gant $11.31 per hour for 24 hours of Daughter's round-the-clock care. *See* Complaint ¶ 58. Michael Gant occasionally provided care for Daughter, and was also Daughter's Power-of-Attorney. *See* Complaint Ex. C, *Gant I*.

In 2013, the Department of Public Welfare[5] filed an emergency action in the Lancaster County Common Pleas Court (Common Pleas Court) seeking to appoint a plenary guardian of Daughter's person and estate.[6] *See id.* ¶ 6. The Common Pleas Court appointed Department agent Denise Getgen (Getgen) as Daughter's emergency guardian; however, after Daughter regained her capacity to make her own medical and financial decisions, the Department withdrew the emergency guardianship action. *See id.* ¶¶ 7-8.

Also in 2013, the Department filed an action in the Common Pleas Court seeking to have Daughter declared a medically compromised adult in need of protective services under the Adult Protective Services Act[7] and to restrict her eligibility for ACWP services (2013 Common Pleas Court Action). *See id.* ¶ 10. On December 11, 2013, the Department also terminated Daughter's ACWP benefits (2013 Administrative Action), and stopped paying the Gants. *See id.* ¶¶ 11, 23, 49. Pursuant to the Department's Regulations that required Daughter or her lawful representative to be notified of the Department's action, the Department served the initial termination notice on Daughter's emergency guardian, Getgen. *See id.* ¶¶ 24-25. In order to maintain eligibility for benefits while an appeal from the 2013 Administrative Action was pending, Daughter or her representative had to have filed an appeal within 10 days from the Department's administrative action. *See id.* ¶¶

---

[5] Effective November 24, 2014, the Department of Public Welfare was officially renamed the Department of Human Services. *See* Act of June 13, 1967, P.L. 31, *as amended*, added by Section 2 of the Act of September 24, 2014, P.L. 2458, 62 P.S. § 103(a).

[6] The Department averred that Daughter was in a "deplorable physical condition" (presenting with dehydration, malnourishment, and pressure wounds), and was unable to speak for herself. Lancaster Regional Medical Center staff had recommended that she be transferred to Hershey Medical Center for treatment, which the Gants had refused. Complaint Ex. C, *Gant I*, 142 A.3d at 969.

[7] Act of October 7, 2010, P.L. 484, 35 P.S. §§ 10210.101-.103, .301-.309, .501-.507, .701-.704.

26-28; see also Ex. A (Act 150 Guidelines) at 22. Despite that Getgen was Daughter's emergency guardian during the 10-day appeal period, Getgen did not file an appeal. *See id*. ¶¶ 27-28. The Gants eventually obtained counsel who filed an appeal from the 2013 Administrative Action outside the 10-day window. *See id*. ¶ 29.

The Common Pleas Court and the Department's Bureau of Hearings and Appeals (BHA) conducted several hearings relative to the 2013 Common Pleas Court Action and the 2013 Administrative Action. *See id*. ¶ 30. By order issued July 7, 2014 (entered July 8, 2014) (July 2014 Order), the Common Pleas Court prohibited Daughter from engaging in the ACWP Consumer-Directed Model. *See id*. ¶ 31; *see also* Complaint Ex. B. Daughter appealed from the Common Pleas Court's July 2014 Order to this Court, and the BHA stayed its decision on the 2013 Administrative Action, claiming that the Common Pleas Court's July 2014 Order effectively decided the 2013 Administrative Action (i.e., that Daughter was not eligible for consumer-directed ACWP services). *See id*. ¶¶ 32-34. On October 22, 2015, Daughter passed away. *See id*. ¶ 45. On June 29, 2016, this Court vacated the July 2014 Order, reversed the Common Pleas Court's ruling that Daughter was an adult in need of protective services, and affirmed the remaining portions of the July 2014 Order. *See id*. ¶ 35; *see also id*. Ex. C, *Dep't of Pub. Welfare v. Gant*, 142 A.3d 964 (Pa. Cmwlth. 2016) (*Gant I*).

The Gants retained new counsel, pursued the 2013 Administrative Action and, after nearly two years, on March 22, 2018, the BHA concluded that the Department unlawfully terminated Daughter's benefits in 2013. *See id*. ¶¶ 36-37; *see also id*. Ex. D. The Department filed a request with the Department's Secretary (Secretary) for reconsideration (Reconsideration Request), and the Secretary stayed reinstatement of Daughter's benefits pending the Secretary's decision on the Reconsideration Request. *See id*. ¶¶ 38-39. Nearly three years later, on January 21,

2021, the Secretary denied the Reconsideration Request.[8]  *See id.* ¶ 40; *see also id.* Ex. E.

From December 11, 2013 to October 22, 2015, the Gants continued to provide care for Daughter, but the Department did not compensate them for their services.  *See id.* ¶¶ 49-51.  However, the Department's termination of Daughter's benefits was ultimately determined to be unlawful.  *See id.* ¶ 52.  "Had the Department not illegally terminated [Daughter's] benefits, [] [Daughter] would have continued using [the Gants] as her paid caregivers, thereby entitling them to payment for services from the Department."  *Id.* ¶ 53.  Despite that the Gants have supplied their timesheets for services they provided to Daughter during approximately 85 weeks from February 2014 (when Daughter was released from her December 2013 hospitalization) to October 22, 2015 (the date of her death),[9] the Department has refused to pay them.  *See id.* ¶¶ 54-57.  The Gants maintain that had the Department not unlawfully terminated Daughter's benefits, they would have been eligible for approximately $161,506.80 in payment for their services provided to Daughter ($11.31 x 168 x 85 = $161,506.80).  *See id.* ¶¶ 59-62.

## Facts

On March 9, 2021, the Gants initiated the instant action in this Court's original jurisdiction by writ of summons.[10]  The Gants received permission from this Court to amend the caption and serve a complaint.  On November 2, 2021, the Gants filed a complaint.  The Department filed preliminary objections thereto on December

---

[8] In the interim, the Gants' counsel communicated that he may file a mandamus action against the Department for the Secretary to decide their reconsideration request.  *See* Complaint ¶¶ 41-43.

[9] The Gants adjusted the amount due for the times Daughter was hospitalized between December 2013 and October 2015 while Daughter was not under their care.  *See id.* ¶ 60.

[10] Service was delayed based on the Gants naming then-Secretary Theresa D. Miller as respondent.

2, 2021. On January 3, 2022, the Gants filed the Complaint. On January 4, 2022, this Court ordered the preliminary objections stricken.

On February 1, 2022, the Department filed the Preliminary Objections. Therein, the Department averred that the Complaint: (1) fails to state a valid cause of action due to sovereign immunity (First Preliminary Objection); (2) does not include a necessary writing (Second Preliminary Objection); (3) fails to state a valid cause of action because the adjudication of Daughter's rights and claims did not entitle the Gants to the requested relief (Third Preliminary Objection); (4) is insufficiently specific (Fourth Preliminary Objection); (5) fails to establish that the Gants have standing (Fifth Preliminary Objection); and (6) establishes that the Gants have an adequate non-statutory remedy at law (Sixth Preliminary Objection). On March 2, 2022, the Gants opposed the Preliminary Objections. On April 5, 2022, the Department filed its brief in support of its Preliminary Objections. On May 4, 2022, the Gants filed their brief in opposition to the Preliminary Objections. On May 18, 2022, the Department filed a Reply Brief. The case is now in the proper posture for disposition.

## Discussion

Pennsylvania Rule of Appellate Procedure 1516(b) authorizes parties to file preliminary objections to pleadings filed in this Court's original jurisdiction. *See* Pa.R.A.P. 1516(b).

> In ruling on preliminary objections, we must accept as true all well-pleaded material allegations in the [complaint], as well as all inferences reasonably deduced therefrom. The Court need not accept as true conclusions of law, unwarranted inferences from facts, argumentative allegations, or expressions of opinion. In order to sustain preliminary objections, *it must appear with certainty that the law will not permit recovery*, and any doubt should be resolved by a refusal to sustain them.

6

> A preliminary objection in the nature of a demurrer admits every well-pleaded fact in the complaint and all inferences reasonably deducible therefrom. It tests the legal sufficiency of the challenged pleadings and will be sustained only in cases where the pleader has clearly failed to state a claim for which relief can be granted. When ruling on a demurrer, a court must confine its analysis to the complaint.

*Torres v. Beard*, 997 A.2d 1242, 1245 (Pa. Cmwlth. 2010) (emphasis added; citations omitted). "'[C]ourts reviewing preliminary objections may not only consider the facts pled in the complaint, but also any documents or exhibits attached to it.' *Allen v. Dep't of Corr.*, 103 A.3d 365, 369 (Pa. Cmwlth. 2014)." *Foxe v. Pa. Dep't of Corr.*, 214 A.3d 308, 311 n.1 (Pa. Cmwlth. 2019).

**Sovereign Immunity**

Regarding the Department's First Preliminary Objection, Pennsylvania Rule of Civil Procedure 1028(a)(4) provides that preliminary objections may be filed by any party to any pleading based on the "legal insufficiency of a pleading (demurrer)[.]" Pa.R.Civ.P. 1028(a)(4). The Department contends that the Gants have not identified any contract, rule, regulation, or statute entitling them to their requested relief under which the Department has waived sovereign immunity. The Department further claims that the Act 150 Guidelines are not relevant here because the Act 150 program and the ACWP are different programs. *See* Prelim. Objs. at 4 n.1.

The Gants acknowledge that the Act 150 program differs from the ACWP, but claim that the Act 150 program is sufficiently similar, if not identical, to the ACWP which has no published guidelines. *See* Answer to Prelim. Objs. ¶¶ 10-11. The Gants further assert that the Act 150 Guidelines make "clear that the Department is the common[-]law employer of paid caregivers, such as [the Gants.]" Answer to Prelim. Objs. ¶ 10. Thus, the Gants claim that "sovereign immunity does

7

not apply" to "the Gants['] status as employees - common law, contractual, at[ ]will, or some combination thereof [-] of the Department." Gant Br. at 27.

Section 52.3 of the Department's Regulations defines the "Act 150" program as "[a s]tate-funded program under the Attendant Care Services Act (62 P.S. §§ 3051-3058)." 55 Pa. Code § 52.3. "Attendant Care [W]aiver is defined therein as "[a f]ederally-approved [] waiver under [S]ection 1915(c) of the Social Security Act[, 42 U.S.C. § 1396n(c),] that authorizes services to participants 18 years of age or older but under 60 years of age with physical disabilities."[11] *Id.* "The Act 150 [] Guidelines provide the necessary requirements for the management of the Act 150 [p]rogram. They include policy and program areas that are specific to the Act 150 [p]rogram." *See* Complaint Ex. A, Act 150 Guidelines, at 1. In addition, the Act 150 Guidelines reflect that persons are only eligible for the Act 150 program if

---

[11] Such "[w]aiver[s]" include "[t]he . . . Attendant Care . . . and Community-Based Service waivers approved by the Federal Centers for Medicare and Medicaid Services." 55 Pa. Code § 52.3.

they are *not* eligible for a Medicaid waiver program, such as the ACWP. *See id.* at 3,[12] 17,[13] 25-26.[14] Therefore, the Act 150 Guidelines do not govern here.

Even if the Act 150 Guidelines applied in the instant case, the provisions related to service level changes the Gants cite state:

> The [service coordinator (]SC[)] shall document the facts supporting his or her determination and shall provide the participant with 30 days advance written notice of the change. The notice shall include an explanation of the proposed change in the scope or level of service(s), the facts supporting the change, the participant's right to appeal the change, and the participant's right to continue to receive service pending the outcome of his/her administrative appeal if his/her appeal is filed within 10 days of the postmark date of the SC's notice.

Act 150 Guidelines at 22 (emphasis added). The Gants admit in the Complaint that neither they nor Daughter's then-emergency guardian appealed from the Department's termination notice within 10 days. *See* Complaint ¶ 29. Further, the

---

[12] If an applicant for Act 150 services is both [Nursing Facility Clinically Eligible (NFCE)] and financially eligible for the [ACWP], the applicant shall enroll in the [ACWP] to receive services. Should a participant who is NFCE, under age 60 and being served through the Act 150 [p]rogram become financially eligible for the ACW[P], the participant shall be enrolled in the waiver in order to continue to receive attendant care services.

Act 150 Guidelines at 3.

[13] 1. . . . . Prospective participants shall exhaust other sources of service, including those provided under third[-]party benefits, prior to receiving Act 150 [program] services.

2. If a participant in a Medicaid waiver loses eligibility for the waiver due to an increase in income or resources, the participant may apply for enrollment in the Act 150 [p]rogram . . . .

Act 150 Guidelines at 17.

[14] "Act 150 [program] services are provided only if an applicant/participant is not eligible for Medicaid waiver services." Act 150 Guidelines at 25-26. "Act 150 is the payor of last resort . . . ." *Id.* at 26.

Gants did not file the Complaint or any other sort of claim preserving their purported rights with the Department within 10 days of the Department's termination notice. Accordingly, even if applicable, the Act 150 Guidelines offer no legal basis for the Gants' damage claim.

Moreover, article I, section 11 of the Pennsylvania Constitution declares:

> All courts shall be open; and every man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law, and right and justice administered without sale, denial or delay. Suits may be brought against the Commonwealth in such manner, in such courts and in such cases as the [l]egislature may by law direct.

PA. CONST. art. I, § 11. Section 2310 of the Pennsylvania Consolidated Statutes' General Provisions states:

> Pursuant to section 11 of [a]rticle I of the Constitution of Pennsylvania, it is hereby declared to be the intent of the General Assembly that the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity. When the General Assembly specifically waives sovereign immunity, a claim against the Commonwealth and its officials and employees shall be brought only in such manner and in such courts and in such cases as directed by the provisions of Title 42 (relating to judiciary and judicial procedure) or 62 (relating to procurement) unless otherwise specifically authorized by statute.

1 Pa.C.S. § 2310.

10

In Section 8522 of what is commonly referred to as the Sovereign Immunity Act,[15] the General Assembly expressly waived sovereign immunity for Commonwealth parties in limited cases. *See* 42 Pa.C.S. § 8522.

Section 8522 of the Sovereign Immunity Act provides:

**(a) Liability imposed.--**The General Assembly, pursuant to section 11 of [a]rticle I of the Constitution of Pennsylvania, does hereby waive, in the instances set forth in subsection (b) only and only to the extent set forth in this subchapter and within the limits set forth in [S]ection 8528 [of the Judicial Code, 42 Pa.C.S. § 8528] (relating to limitations on damages), sovereign immunity as a bar to an action against Commonwealth parties,[16] for damages arising out of a negligent act where the damages would be recoverable under the common law or a statute creating a cause of action if the injury w[as] caused by a person not having available the defense of sovereign immunity.

**(b) Acts which may impose liability.--**The following acts by a Commonwealth party may result in the imposition of liability on the Commonwealth and the defense of sovereign immunity shall not be raised to claims for damages caused by: (1) Vehicle liability.--The operation of any motor vehicle in the possession or control of a Commonwealth party. . . . [;] (2) Medical-professional liability. . . . [;] (3) Care, custody or control of personal property.--The care, custody or control of personal property in the possession or control of Commonwealth parties, including Commonwealth-owned personal property and property of persons held by a Commonwealth agency. . . . [;] (4) Commonwealth real estate, highways and sidewalks. . . . [;] (5) Potholes and other dangerous conditions. . . . [;] (6) Care, custody or control of animals. . . . [;] (7) Liquor store sales. . . . [;] (8) National Guard activities. . . . [;] (9) Toxoids and vaccines. . . . [;] [and] (10) Sexual abuse. . . .

---

[15] 42 Pa.C.S. §§ 8521-8527.

[16] Section 8501 of the Judicial Code defines "Commonwealth party" as "[a] Commonwealth agency and any employee thereof, but only with respect to an act within the scope of his office or employment." 42 Pa.C.S. § 8501.

11

42 Pa.C.S. § 8522 (text emphasis omitted).  Accordingly,

> "[t]o impose liability on a Commonwealth party, (1) the alleged **negligent act** must involve a cause of action that is recognized at common law or by a statute, **and** (2) the case must **fall within one of** [**the**] **exceptions** to sovereign immunity listed in Section 8522(b)" of . . . the Sovereign Immunity Act.

*Young v. Wetzel*, 260 A.3d 281, 289 (Pa. Cmwlth. 2021) (emphasis added); *see also LaChance v. Michael Baker Corp.*, 869 A.2d 1054 (Pa. Cmwlth. 2005); *Bufford v. Pa. Dep't of Transp.*, 670 A.2d 751 (Pa. Cmwlth. 1996).

In this case, the Gants' claim "is neither one for damages arising out of a negligent act[,] nor within the purview of the exceptions to sovereign immunity which may impose liability." *Valley Gypsum Co., Inc. v. Pa. State Police*, 581 A.2d 707, 710 (Pa. Cmwlth. 1990).  The Gants do not specify in the Complaint any other valid basis under which the General Assembly waived the Department's sovereign immunity.[17]  Because the General Assembly has not expressly waived sovereign

---

[17] Rather, the Gants assert:

> [The Gants] rely on the similar, if not identical, provisions of the [ACWP] and other bodies of law for the proposition that [they] were either the common law employees of the Department, or that they were entitled to payments as intended third-party beneficiaries of [Daughter], [sic] participation in the [ACWP] which was illegally terminated by the Department.  By way of further answer, [the Gants] are not required to plead every single statute, regulation, or otherwise which supports their position.  Rather, the body of law as it exists in Pennsylvania is automatically incorporated into every legal pleading.

Answer to Prelim. Objs. ¶ 11.  However, "[t]he Court need not accept as true conclusions of law, unwarranted inferences from facts, argumentative allegations, or expressions of opinion." *Torres*, 997 A.2d at 1245.  The Gants' conclusion that they were the Department's employees is an unwarranted inference without factual or legal support, *see* Complaint ¶¶ 15, 19, particularly when they declare elsewhere in the Complaint that they were *Daughter's* employees, *see id.* ¶ 17, and they offer no legal basis under which the Department's actions against Daughter entitle them to recovery.

12

immunity for the claim the Gants present in the Complaint, the Department is immune therefrom.

At best, this Court gleans from the Complaint that the Gants are asserting a contract claim. This Court acknowledges that, in Section 1702(b) of the Commonwealth Procurement Code (Procurement Code),

> the General Assembly has waived sovereign immunity for *certain contract claims* against the Commonwealth and its agencies, but that waiver applies only to claims 'brought in accordance with' Sections 1711.1 (relating to protests of solicitations or awards) and 1712.1 (relating to contract controversies) and [Chapter 17,] Subchapter C (relating to [the Board of Claims) [of the Procurement Code] and even then 'only to the extent set forth in [Chapter 17, Subchapter C of the Procurement Code, 62 P.S. §§ 1711.1, 1712.1, 1721-1726].' 62 Pa.C.S. § 1702.

*Roe v. Pa. Game Comm'n*, 147 A.3d 1244, 1253 (Pa. Cmwlth. 2016).

Relative to contract controversies, Section 1712.1 of the Procurement Code explains, in pertinent part:

> **(a) Right to claim.--**A contractor[18] may file a claim with the contracting officer in writing for controversies arising from a contract[19] entered into by the Commonwealth.

---

[18] The term *contractor* is defined in Section 103 of the Procurement Code as "[a] person that has entered into a contract with a Commonwealth agency." 62 Pa.C.S. § 103.

[19] Section 103 of the Procurement Code defines *contract* as "[a] type of written agreement, regardless of what it may be called, for the procurement or disposal of supplies, *services* or construction and executed by all parties in accordance with the [A]ct of October 15, 1980 (P.L. 950, No. 164), known as the Commonwealth Attorneys Act." 62 Pa.C.S. § 103 (emphasis added). *Services* are defined therein as

> [t]he furnishing of labor, time or effort by a contractor not involving the delivery of a specific end product other than drawings, specifications or reports which are merely incidental to the required performance. . . . The term does not include employment agreements or collective bargaining agreements. The term includes

13

> **(b) Filing of claim.--**A claim shall be filed with the contracting officer within six months of the date it accrues. If a contractor fails to file a claim or files an untimely claim, the contractor is deemed to have waived its right to assert a claim in any forum. Untimely filed claims shall be disregarded by the contracting officer.

62 Pa.C.S. § 1712.1. Section 1724(a)(1), (c) of the Procurement Code further specifies that the Board of Claims shall have exclusive jurisdiction over controversies involving contracts entered into by Commonwealth agencies filed pursuant to Section 1712.1 of the Procurement Code. *See* 62 Pa.C.S. § 1724(a)(1), (c).

The Gants filed this action on March 9, 2021. The Gants did not aver in the Complaint that they filed any action with the Department's contracting officer or with the Board of Claims based on a written contract within six months of the Department's December 2013 termination of Daughter's ACWP participation. Further, the Gants did not allege that they filed any similar action within six months of this Court's June 29, 2016 Order, or within six months of the BHA's March 22, 2018 conclusion that the Department unlawfully terminated Daughter's benefits.[20] Therefore, they did not satisfy the prerequisites that would have stripped the Department's sovereign immunity pursuant to Section 1702(b) of the Procurement Code.

Notwithstanding, Section 1724(c) of the Procurement Code proclaims that "[t]he [B]oard [of Claims] shall have no power and exercise no jurisdiction over claims for payment or damages to providers of medical assistance services arising out of the operation of the medical assistance program established by the . . . [Human

---

utility services and those services formerly provided by public utilities such as electrical, telephone, water and sewage service.

*Id.*

[20] The Gants filed the instant action within six months of the Secretary's January 21, 2021 Reconsideration Request denial, but not with the Board of Claims.

14

Services] Code." 62 Pa.C.S. § 1724(c). And, regardless of whether the Gants would be considered "providers of medical assistance services,"[21] *id*., the Board of Claims does not have jurisdiction over claims arising from employment contracts entered into with Commonwealth agencies. *See* Section 103 of the Procurement Code, 62 Pa.C.S. § 103 (The term *services* excludes "employment agreements[.]"); *see also Dubaskas v. Dep't of Corr.*, 81 A.3d 167 (Pa. Cmwlth. 2016) (the Procurement Code does not grant the Board of Claims jurisdiction over claims arising from employment contracts entered into with a Commonwealth agency).

> This Court has explained:
>
> > [T]he law is clear that the Commonwealth is immune from suit except as specifically waived by the General Assembly, and the General Assembly has waived sovereign immunity for claims over which the Board [of Claims] has exclusive control. By extension, **claims over which the Board [of Claims] does not have exclusive control are barred by sovereign immunity**.

*Roe*, 147 A.3d at 1252 (emphasis added). Because contract controversies stemming from employment-related contracts do not fall under the Board of Claims' exclusive jurisdiction, the immunity exception in Section 1702(b) of the Procurement Code does not apply here.

> > Without the General Assembly's express abrogation of sovereign immunity, [the Gants are] without recourse. Although we are sympathetic to [their] situation, this Court is not authorized to create or expand the [Board of Claims'] jurisdiction, and is bound to adhere to the General Assembly's mandates. In *Armenti* [*v. Pennsylvania State System of Higher Education*, 100 A.3d 772 (Pa. Cmwlth. 2014)], this Court . . . stated:
> >
> > > [T]his Court is not at liberty to grant [the petitioner] the relief he requests because the Commonwealth has not waived sovereign

---

[21] Neither the Procurement Code nor the Human Services Code define the term.

immunity for suits based on [his specific type of claim].

. . . .

Our appellate courts have consistently recognized that the Commonwealth is protected from civil suit by sovereign immunity except where the General Assembly has specifically waived that immunity. The limited exceptions to sovereign immunity must be narrowly and strictly construed because the General Assembly intended to exempt the Commonwealth from immunity only in specific situations. . . .

As our Supreme Court explained in *Scientific Games* [*International, Inc. v. Department of Revenue*, 66 A.3d 740 (Pa. 2013)], the Procurement Code is 'designedly structured to accord immunity, subject only to specific and limited exceptions.' *Id.* at 753. '[T]he exception to sovereign immunity pertaining to [Board of Claims'] jurisdiction *defines the extent of the Commonwealth's statutory exception from sovereign immunity for claims arising from* [*a*] *contract.*' *Id.* at 755 (emphasis added).

. . . . In the absence of legislative action, this Court is not at liberty to craft [the petitioner] a waiver of sovereign immunity.

. . . .

*Armenti*, 100 A.3d at 777.

*Roe*, 147 A.3d at 1252-53.

Because the Department is immune from the Gants' purported employment/contract claim, the Department's First Preliminary Objection is sustained.

16

## Conclusion

Based on the foregoing, the Department's First Preliminary Objection is sustained, and the Complaint is dismissed.[22]

_____
ANNE E. COVEY, Judge

---

[22] Given that the Gants' Complaint is barred by sovereign immunity, this Court need not address the Department's remaining Preliminary Objections.

Michael and Abadella Gant,   :
Husband and wife,     :
    Petitioners   :
           :
  v.       :
           :
Department of Human Services, :  No. 324 M.D. 2021
    Respondent  :

# O R D E R

AND NOW, this 6th day of December, 2023, the Department of Human Services' first Preliminary Objection to Michael and Abadella Gant, husband and wife's, First Amended Petition for Review (Complaint) is SUSTAINED, and the Complaint is DISMISSED.

_____
ANNE E. COVEY, Judge